1

2

3

4

5

6

7

8          **UNITED STATES DISTRICT COURT**

9          **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   DATAQUILL LIMITED,                          CASE NO. 08cv543 - IEG - LSP

12                            Plaintiff,          ORDER GRANTING HTC'S
                                                  MOTION TO STAY THE
13          vs.                                   PROCEEDINGS PENDING PATENT
                                                  REEXAMINATION
14   HIGH TECH COMPUTER CORP.,
                                                  [Doc. No. 21]
15                            Defendant.
     _____
16
     HIGH TECH COMPUTER CORP.,
17
                            Counterplaintiff,
18
            vs.
19
     DATAQUILL LIMITED,
20
                            Counterdefendant.
21
            In this patent infringement action, Defendant High Tech Computer Corp. ("HTC") has filed
22
     a motion to stay the proceedings pending the U.S. Patent and Trademark Office's ("PTO") ex parte
23
     reexamination of the patents-in-suit.  (Doc. No. 21.)  Plaintiff DataQuill Limited ("DataQuill")
24
     opposed and HTC replied.  After considering the parties' submissions, and for the reasons set forth
25
     below, the Court GRANTS HTC's motion.
26
                                       **BACKGROUND**
27
            On May 2, 2000, the PTO issued U.S. Patent No. 6,504,304 ("the '304 patent") to DataQuill.
28

                                                - 1 -                          08cv543 - IEG - LSP

1   The technology at issue relates to handheld mobile devices with remote access capability and optional

2   features such as a touch sensitive screens or integrated cameras.

3       In November 2006, the PTO issued U.S. Patent No. 7,139,591 ("the '591 patent") to DataQuill.

4   The '591 patent also claims inventions in the field of handheld mobile devices.  From May 2006 to

5   late 2008, DataQuill pursued infringement counterclaims against a third party to enforce the '304 and

6   '591 patents in the Northern District of Texas (the "Texas Action").

7       Currently, the PTO is conducting an ex parte reexamination of both the '304 patent and the

8   '591 patent.  The reexamination of the '304 patent began on January 25, 2007, at the request of a third

9   party.  The PTO found a substantial question of patentability existed and rejected all of the '304

10  patent's claims.  DataQuill responded to this rejection and now awaits further PTO action.

11      On February 9, 2007, a third party requested the PTO reexamine the '591 patent.  The PTO

12  found a substantial question of patentability existed and rejected all claims of the '591 patent.

13  However, the PTO reopened the prosecution after a March 4, 2009 meeting with DataQuill.  On April

14  8, 2009, the PTO issued a "Notice of Intent to Issue a Reexamination Certificate," finding the '591

15  patent's claims to be patentable.

16      DataQuill alleges HTC infringed both the '304 patent and the '591 patent.  HTC answered and

17  filed counterclaims on December 8, 2008.  On January 27, 2009, DataQuill received a 60-day

18  extension to respond to HTC's counterclaims.  (Doc. No. 4.)  The Early Neutral Evaluation

19  Conference occurred on February 9, 2009.[1]  On April 1, 2009, HTC filed this motion to stay the

20  proceedings. The Court has delayed scheduling the Case Management Conference pending resolution

21  of this motion.

22                              **LEGAL STANDARD**

23      A court has the inherent power to stay an action pending conclusion of PTO reexamination

24  proceedings. Ethicon, Inc. v. Quigg, 849 F.2d 1422,1426-27 (Fed.Cir.1988).  "The decision whether

25  to grant or deny a motion to stay proceedings pending PTO reexamination rests within the sound

26  discretion of the court."  SKF Condition Monitoring, Inc. v. SAT Corp., 2008 WL 706851 at *6 (S.D.

27

28      [1] HTC asserts "the Early Neutral Evaluation conference has yet to transpire . . . ."  (Def. Mot.
    at 1.)  However, the docket reflects the ENE occurred on February 9, 2009.  (Doc. No. 18.)

Cal. February 27, 2008).  When faced with parallel PTO reexamination proceedings, courts generally favor granting the stay.  ASCII Corp. v. STD Entertainment USA, Inc., 844 F. Supp. 1378, 1381 (N.D.Cal.1994).  Courts consider three factors when evaluating the propriety of a stay: "(1) the stage of litigation, i.e., whether discovery is almost complete and whether a trial date has been set; (2) whether a stay would cause undue prejudice or present a clear disadvantage to the non-moving party; and (3) whether a stay will simplify the issues in question and trial of the case." SKF Condition Monitoring, 2008 WL 706851 at *6 (citing Xerox Corp. v. 3Com Corp., 69 F. Supp. 2d 404, 406 (W.D.N.Y.1999)).

**DISCUSSION**

**A.      Stage of the Proceedings**

i.       Parties Arguments

HTC argues the early stage of litigation weighs in favor of the stay.  According to HTC, the ENE has not occurred, the Case Management Conference has not been scheduled, and discovery has not commenced.  HTC emphasizes opinions of other courts that have stayed actions pending reexamination even when the parties have partially or substantially completed discovery, citing SKF Condition Monitoring, 2008 WL 706851 at *6, and Sorenson v. The Black and Decker Corp., 2007 U.S. Dist. LEXIS 66712, at *10 (S.D. Cal. Sept. 10, 2007).

DataQuill argues progress in related cases weighs against a stay.  DataQuill notes HTC's counsel, who represented a third party in the Texas Action, already has experience with the disputed patents.  Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc., 2008 U.S. Dist. LEXIS 102716, at *5-6 (D. Del. December 19, 2008).  This experience, argues DataQuill, will allow HTC to shorten discovery and claim construction proceedings, thereby, mitigating the need for a stay.  DataQuill also argues HTC has impeded progress of the suit, which weighs against the stay.  Sorensen v. AmPro Tools Corp., 2009 U.S. Dist. LEXIS 21627, at *3-6 (N.D. Cal. March 9, 2009).

HTC notes the Texas Action did not involve the '591 patent because it had not yet issued.  Because the '591 patent did not exist, HTC's lawyers have not deposed the inventors.

ii.      Analysis

The action is in its infancy: discovery has not commenced and the Court has delayed setting

1  the Case Management Conference during the pendency of this motion.  This factor weighs in favor

2  of a stay.  See, e.g., Tesco Corp. v. Weatherford Int'l, Inc., 599 F. Supp. 2d 848, 853 (S.D. Tex. 2009)

3  ("Here, the case has just begun, no trial date has been set, and the Court delayed entry of a scheduling

4  order until this motion to stay was decided. This factor weighs in favor of a stay.").

5        The completion of discovery in the Texas Action is irrelevant. Other courts evaluate the extent

6  discovery has been completed in related cases only when both actions involve the same parties and

7  issues. See, e.g., Power Integrations, Inc. v Fairchild Semiconductor Int'l, Inc, 2008 U.S. Dist. LEXIS

8  102716, at *5-6 (D. Del. December 19, 2008).  However, HTC was *not* a party to the Texas Action.

9  HTC is entitled to its own discovery and claims construction proceeding. The participation of HTC's

10  *counsel* in other suits is immaterial to HTC's right to discovery in this action.  Further, the '591 patent

11  was not at issue in the Texas Action.

12        HTC's purported dilatory tactics do not alter this Court's conclusion, notwithstanding

13  DataQuill's reliance on Sorensen.  In Sorensen, the court discounted the early stage of the proceedings

14  and granted the stay because the defendant had "stalled th[e] action for almost one year."  Sorensen,

15  2009 U.S. Dist LEXIS 21627, at *6.  Specifically, the defendant "refused to participate in the

16  proceedings for almost one year" and "did not even begin to respond to [plaintiff's] claim until the

17  clerk made the default entry." Id. at *5.  Unlike the Sorensen defendant, HTC filed an answer, waived

18  service, and participated in ENE.  Therefore, the Court finds Sorensen inapplicable and the stage of

19  the proceedings favors a stay.

20  **B.        Undue Prejudice or Disadvantage**

21  i.        Parties Arguments

22        HTC argues a stay would not prejudice DataQuill because it has an adequate remedy at law,

23  citing SKF Condition Monitoring, 2008 U.S. Dist. LEXIS 24310, at *19.  HTC asserts DataQuill's

24  delay in prosecuting the alleged infringement demonstrates DataQuill does not believe delay will

25  cause prejudice.

26        DataQuill contends its ability to license its patents will be hampered by the stay and evidence

27  may be lost.  DataQuill believes its ability to pursue injunctive relief is irrelevant and argues it has

28  diligently pursued this action.  Further, DataQuill argues proceeding with the case will not harm HTC

because it is "already up to speed." (Pl. Opp. at 13.)  DataQuill also argues the '591 patent has been deemed "patentable" by the PTO, therefore, there is no reason to grant the stay.  Based on these arguments, DataQuill concludes a stay would be unduly prejudicial.

ii.    Analysis

"Where Plaintiffs have an adequate remedy at law, there is no undue prejudice." SKF Condition Monitoring, 2008 U.S. Dist. LEXIS 24310 at \*19 (internal quotations omitted).  Here, DataQuill claims a stay would cause a delay in collecting monetary damages, a delay in excluding HTC from practicing the patent, and loss of value of its license.  DataQuill has not shown monetary damages will inadequately compensate it for these alleged injuries.  Further, although DataQuill worries the reexamination will delay prosecution of its infringement claims, the delay caused by the reexamination process "does not constitute, by itself, undue prejudice." Photoflex Prods. v. Circa 3 LLC, 2006 U.S. Dist. LEXIS 37743 at \*5 (N.D. Cal. May 23, 2006).  Additionally, the potential loss of evidence, while relevant, is not dispositive.  None of the cited cases relied exclusively on the potential loss of evidence when denying a stay. See, e.g., Sorensen v. AmPro Tools Corp., 2009 U.S. Dist. 21627 at \*6 (considering the bad faith dilatory tactics, which threatened a loss of evidence, when denying the stay).  Accordingly, the Court finds a stay will not unduly prejudice DataQuill.

**C.    Simplifying the Issue and Streamline the Trial**

i.    Parties' Arguments

HTC argues a stay will simplify the issues for trial.  HTC contends the Court can benefit from the PTO's expert evaluation of the claims in both patents.  Additionally, if the PTO finds any of the claims invalid, then the infringement issue could be mooted.  Finally, HTC discusses the problems arising from a scenario in which it is held liable for infringement, but the patent is later invalidated.

DataQuill believes a stay will not simplify the issues because the PTO has already found the amended claims of the '591 patent are patentable and the reexamination of the '304 patent does not affect some of the issues in this action.

HTC's reply is three-fold.  First, HTC notes the PTO only issued the "Notice of Intent to Issue a Reexamination Certificate" after extensive amendments to the '591 patent.  Therefore, HTC urges, the Court should await the final results of the reexamination, which bear upon claim construction and

1  prosecution history estoppel.  Second, HTC contends a "Notice of Intent to Issue a Reexamination

2  Certificate" does not guarantee the PTO will issue a reexamination certificate, citing Panduit Corp.

3  v. Hellermannyton Corp., 2005 U.S. Dist. LEXIS 5627 (N.D. Ill. 2005) (refusing to lift stay upon the

4  PTO's issue of notice of intent to issue a reexamination certificate until the reexamination certificate

5  actually exists).  Third, HTC argues regardless of the '591 patent's status, the Court should stay the

6  action pending the reexamination of the '304 patent.

7  ii.    Analysis

8      The Court finds the stay will result in the simplification of issues in this case.  As the Federal

9  Circuit explained, the "purpose of the reexamination procedure is to eliminate trial" of the issue of

10  patent claim validity.  Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed. Cir. 1983).  As one

11  Court noted, "historical data indicates that a patent undergoing re-examination is more likely than not

12  to change in some way, which would be grounds to justify a stay."  Abbott Laboratories, Inc. v.

13  Medtronic, Inc., 2009 WL 799404, at *3 (N.D. Cal. March 24, 2009).  In this case, the Court will

14  benefit from the PTO's evaluation of the prior art. DataQuill has extensively amended the '591 patent

15  during reexamination.  Similar amendments could occur during the reexamination of the '304 patent

16  – which would profoundly impact claim construction and the evaluation of prosecution history.

17      Further, the stay will continue until the PTO completes reexamination of both the '304 patent

18  and the '591 patent.  "When there are overlapping issues between [a] reexamined patent[] and other

19  patents in suit, courts have found staying the entire case to be warranted."  KLA-Tencor Corp. v.

20  Nanometrics, Inc., 2006 WL 708661, at *4 (N.D. Cal. March 16, 2006).  Courts have stayed the entire

21  action if reexamination of one patent would significantly affect the litigation of the non-examined

22  patent.  Id.  Here, the '304 patent is the parent application to the '591 patent, meaning many of the

23  claims taught in the '304 patent affects the interpretation of the '591 patent.  Therefore, a stay of the

24  entire action is warranted pending completion of the PTO's reexamination of both patents.

25  **D.    Balancing the Factors**

26      All of the factors weigh in favor of granting the stay.  Accordingly, the Court finds a

27  reasonable stay of 90 days is appropriate to avoid the risk of unnecessary litigation and to clarify the

28  issues before the Court. If the PTO completes reexamination within the 90 day period, counsel shall

1  notify the Court in writing.  Additionally, either party may move for exception to the stay if it

2  reasonably believes an exception is needed to preserve evidence.  Therefore, HTC's motion to stay

3  is GRANTED.

4  **CONCLUSION**

5      For the foregoing reasons, the Court GRANTS HTC's Motion to Stay.  The Court will conduct

6  a status conference for <u>August 31, 2009 at 10:30 a.m</u>.  The parties should submit a status report on the

7  reexamination process no later than <u>August 17, 2009</u>.

8  **IT IS SO ORDERED.**

9  **DATED:  May 14, 2009**

10      **IRMA E. GONZALEZ, Chief Judge**
    **United States District Court**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28