Gregory S. Markow
HECHT SOLBERG ROBINSON GOLDBERG BAGLEY LLP
600 West Broadway, 8th Floor
San Diego, California  92101
Telephone:     (619) 239-3444
Facsimile:      (619) 232-6828

Greg Smith
55 West Monroe, Suite 1930
Chicago, Illinois  60603
Telephone:     (312) 953-5607
Facsimile:      (312) 629-1988

Counsel for Plaintiff
DataQuill Limited, a British Virgin Islands Company

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DATAQUILL LIMITED,** | No. 08-CV-00543 IEG (LSP) |
| Plaintiff, | **DATAQUILL'S REPLY TO HTC'S AMENDED COUNTERCLAIMS** |
| v. | |
| **HIGH TECH COMPUTER CORP.** | **JURY TRIAL DEMANDED** |
| Defendant. | |
| **HTC CORPORATION,** | Judge: Irma E. Gonzalez |
| Counterplaintiff, | Magistrate Judge: Leo S. Papas |
| v. | |
| **DATAQUILL LIMITED,** | |
| Counterdefendant. | |

1. DataQuill based on present information admits the allegations of this paragraph.

2. DataQuill admits that DataQuill Limited is a limited company organized under the laws of the British Virgin Islands.  The remaining allegations are denied.

3. DataQuill admits that this Court has subject matter jurisdiction, and that DataQuill has accused HTC of infringing certain claims of the patents. The remaining allegations are denied.

4. DataQuill admits that jurisdiction and venue in this district are proper; otherwise denied.

5. DataQuill admits the referenced Request for Reexamination was filed and re-filed on the dates alleged. DataQuill admits the Request was granted on the date alleged and assigned the control number alleged. DataQuill admits the referenced Reexamination Certificate was issued on the date alleged. DataQuill admits certain claims were cancelled, certain claims were amended, and claims were added including certain dependent claims rewritten in independent form, among other actions documented in the public record of the reexamination proceeding. Facts concerning HTC's allegations about filing dates, control numbers, amendment of claims, etc., are a matter of public record in the Patent Office files, and DataQuill reserves all rights to prove facts as indicated in the public record and other evidence, and to address legal issues related thereto; HTC's characterization and allegations are otherwise denied.

6. DataQuill admits the referenced Request for Reexamination was filed on December 21, 2006 and re-filed on February 9, 2007. DataQuill admits the Request was granted on the date alleged and assigned the control number alleged. DataQuill admits the referenced Reexamination Certificate was issued on the date alleged. DataQuill admits the independent claims were amended. Facts concerning HTC's allegations about filing dates, control numbers, amendment of claims, etc., are a matter of public record in the Patent Office files, and DataQuill reserves all rights to prove facts as indicated in the public record and other evidence and to address legal issues related thereto ; HTC's characterization and allegations are otherwise denied.

7. DataQuill incorporates its responses to each preceding allegation.

8. The allegations of this paragraph are denied.

9. The allegations of this paragraph are denied.

10. DataQuill admits only that HTC seeks the relief described in this paragraph. DataQuill denies that HTC is entitled to any such relief.

11. DataQuill incorporates its responses to each preceding allegation.

12. The allegations of this paragraph are denied.

13. DataQuill admits only that HTC seeks the relief described in this paragraph; otherwise denied.

14. DataQuill incorporates its responses to each preceding allegation.

15. The allegations of this paragraph are denied.

16. The allegations of this paragraph are denied.

17. DataQuill admits only that HTC seeks the relief described in this paragraph; otherwise denied.

18. DataQuill incorporates its responses to each preceding allegation.

19. The allegations of this paragraph are denied.

20. DataQuill admits only that HTC seeks the relief described in this paragraph; otherwise denied. DataQuill denies that HTC is entitled to any such relief.

21. DataQuill incorporates its responses to each preceding allegation.

22. This paragraph contains no factual allegations but to the extent it is deemed to contain any, they are denied. Furthermore, no response is required nor made regarding the purported discussion of legal standards contained in this paragraph. The duty of disclosure and its requirements are set forth in the applicable law regarding such duty.

23. The allegations of this paragraph are denied. Furthermore, these allegations of HTC are, *inter alia,* contrary to fact and law and unjustified.

24. The allegations of this paragraph are denied.

25. The allegations of this paragraph are denied.

26. The allegations of this paragraph are denied.

27. DataQuill admits only that HTC makes the referenced allegations.

28.  (and sub-heading (a)).  DataQuill admits United Kingdom patent application 93 21133 was filed October 13, 1993, and named Garry Robb as an inventor.  DataQuill admits documents regarding the referenced PCT application were filed September 27, 1994.  DataQuill admits the referenced PCT application designated the United States, and identified Garry Robb, Paul Doran, and Frank Callaghan as the inventors.  DataQuill admits the '304 patent claims the benefit of the filing date of the October 13, 1993 application as allowed under applicable Patent Office rules.  Facts concerning HTC's allegations about filing dates, application serial numbers, identification of inventors, and identification of foreign priority applications are a matter of public record in the Patent Office files, and DataQuill reserves all rights to prove facts as indicated in the public record and other evidence; HTC's allegations are otherwise denied.

29.  Based on present investigation, and available information and recollection of events, DataQuill believes that:  A company called Winfair Systems was formed and that Mr. Robb was involved in Winfair.  A trade show called "Scantech" related to bar code technology was held in Birmingham, England, in or around June 1992.  Mr. Robb and Mr. Orkisz attended Scantech in 1992, and they are believed to have made available to attendees a certain one-page flyer.  Further, HTC's allegations regarding what it describes as the "two-page brochure" alleged in this paragraph are denied as being unfounded and contrary to the evidence.  DataQuill reserves all rights to prove other or additional facts as supported by evidence from further investigation including discovery in this action.  The allegations in this paragraph are otherwise denied.

30.  DataQuill denies the allegations of this paragraph.

31.  (and sub-heading (b)).  DataQuill admits only that an article entitled "Winfair Launches Two-Way Bar Code Reader" appeared in the Glasgow (Scotland) Herald issue dated August 25, 1992.  DataQuill reserves all rights to prove other or additional facts as supported by evidence from further investigation including discovery in this action.  DataQuill denies that HTC's allegations accurately describe the

1 content of the article, denies that the article itself is accurate in all respects, and
2 otherwise denies the allegations in this paragraph.

3     32.   DataQuill denies that the Glasgow Herald article was material.  See, e.g., July
4 12, 2005 Decision of Hon. Judge Rudi M. Brewster, S.D. California.  Further, based on
5 present investigation and available information and recollection of events, DataQuill
6 believes that:  Mr. Robb, among other things, testified that he believed it is possible he
7 had some knowledge about the article about Winfair around the time it came out in
8 1992, did not recall ever having had a copy of the article in his possession, and did not
9 have a custom or practice of keeping news clippings.  Also, Mr. Robb did not have a
10 copy of the article in his possession nor did it come to mind at the time DataQuill filed
11 its United States patent application in 1996 that led to the '304 patent, or at the time he
12 submitted the inventor's declaration for the United States application that led to the '304
13 patent, April 23, 1996.  DataQuill reserves all rights to prove other or additional facts as
14 supported by evidence from further investigation including discovery in this action.
15 DataQuill otherwise denies the allegations in this paragraph.

16     33.   (and sub-heading (c)).  DataQuill admits the '591 patent issued from the
17 referenced application, was a continuation of a continuation of the application which led
18 to the '304 patent, and claims the benefit of the filing date of the referenced application.
19 The facts concerning the allegations about filing date, application serial number,
20 continuation application, and identification of foreign priority application are a matter
21 of public record in the Patent Office files, and DataQuill reserves all rights to prove
22 other or additional facts as indicated in the public record and other evidence.  DataQuill
23 otherwise denies the allegations in this paragraph.

24     34.   DataQuill admits Jan Orkisz was questioned on or around the alleged date.
25 DataQuill denies HTC's characterization "*two-page* brochure (Orkisz deposition exhibit
26 93)" (emphasis HTC's); the referenced "exhibit 93" was described as "1 page" on
27 Kyocera's exhibit list (submitted with its summary judgment motion): "D-93 Color
28 brochure, double-sided (1 page)." All admissions are based on present investigation and

DataQuill reserves all rights to prove other or additional facts as supported by evidence from further investigation including discovery in this action. DataQuill otherwise denies the allegations in this paragraph.

35. DataQuill admits that the referenced IDS contains, *inter alia*, the quoted text without the bracketed word inserted by HTC. The facts concerning the allegations about the content and date of an IDS are a matter of public record in the Patent Office files, and DataQuill reserves all rights to prove other or additional facts as indicated in the public record and other evidence. DataQuill denies the allegations concerning HTC's described "two-page brochure," and denies that Mr. Orkisz made the statements HTC alleges. DataQuill also otherwise denies the allegations of this paragraph.

36. DataQuill incorporates its response to paragraph 35. DataQuill admits that the referenced IDS contains, *inter alia*, the quoted text without the italics inserted by HTC. The facts concerning the allegations about the content of an IDS are a matter of public record in the Patent Office files, and DataQuill reserves all rights to prove other or additional facts as indicated in the public record and other evidence. DataQuill otherwise denies the allegations of this paragraph.

37. DataQuill denies the allegations of this paragraph. DataQuill also incorporates its response to paragraph 37.

38. Based on present investigation, and available information and recollection of events, DataQuill believes that: Mr. Robb in 1992 was aware of a two-sided, single page brochure that is believed to have been made in or around August or September 1992, and thus would not have existed at the time of the June 1992 Scantech exhibition; nor is it believed to have been publicly distributed. All admissions are based on present investigation and DataQuill reserves all rights to prove other or additional facts as supported by evidence from further investigation including discovery in this action. DataQuill also incorporates its response to paragraph 35. DataQuill otherwise denies the allegations of this paragraph.

39. DataQuill denies the allegations of this paragraph.

     40. (and sub-heading (d)). Based on present investigation, and available information and recollection of events, DataQuill believes that: Mr. Robb testified in his October 2005 deposition that after having seen a copy of a flyer of Winfair Systems which he had not seen for several years his recollection at that time was that copies of a single-sided, one page flyer of Winfair Systems were made available to attendees at Scantech in June 1992. Further it is believed at the time Mr. Robb submitted his declaration in 1996, he no longer worked for DataQuill, Winfair Systems was not an active entity, nor did he recall having a copy of this flyer. The prosecution history of the '304 patent does not indicate that the single-sided, one page referenced flyer was submitted during prosecution of the application which led to the '304 patent. Facts concerning the allegations about what information was submitted during the prosecution history of the '304 patent are a matter of public record in the Patent Office files. DataQuill reserves all rights to prove other or additional facts as supported by evidence from further investigation including discovery in this action. DataQuill otherwise denies the allegations of this paragraph.

     41. (and sub-heading (e)). DataQuill denies the allegations of this paragraph.

     42. DataQuill admits its counsel filed the referenced European counterpart applications. DataQuill admits opposition proceedings were filed in the EPO. The facts concerning the allegations about proceedings in the EPO are a matter of public record. Furthermore, no response is required regarding the purported discussion of legal standards of European law as contained in this paragraph. DataQuill reserves all rights to address legal conclusions or prove other or additional facts as indicated in the public record and other evidence. DataQuill otherwise denies HTC's characterization of European opposition proceedings, and the allegations of this paragraph.

     43. DataQuill admits the identified parties filed oppositions. DataQuill admits the opposition proceedings involved allegations concerning certain art references and certain aspects of priority dates of certain patent claims under European law, and that as more fully stated in the record certain claims were ruled to be entitled to a priority date

of October 13, 1993, and certain claims were ruled to be entitled to a priority date of September 27, 1994.  DataQuill admits that in its U.S. application under U.S. patent law it made a claim to the benefit of an October 13, 1993 foreign application pursuant to and as permitted by the applicable rules for preserving a claim to priority.  Facts concerning the allegations about proceedings in the EPO and the U.S. Patent Office are a matter of public record, and DataQuill reserves all rights to prove other or additional facts as indicated in the public record and other evidence.  DataQuill denies that MPEP 2001.06 and MPEP 2001.06(a) were contravened.  DataQuill also otherwise denies the allegations in this paragraph.  DataQuill incorporates its response to paragraph 42.

44.  DataQuill admits the inventors were generally aware of the European opposition proceedings.  Mr. Milhench was aware of and participated as counsel in the opposition proceedings.  DataQuill admits the referenced document was submitted in the oppositions.  The facts concerning the allegations about the EPO proceedings are a matter of public record, and DataQuill reserves all rights to prove other or additional facts as indicated in the public record and other evidence.  DataQuill's response is based on present investigation and DataQuill reserves all rights to prove other or additional facts as supported by evidence from further investigation including discovery in this action.  DataQuill otherwise denies the allegations of and HTC's characterizations in this paragraph.  DataQuill incorporates its response to paragraph 42.

45.  DataQuill admits the inventors were generally aware of the opposition proceedings.  Mr. Milhench was aware of and participated as counsel in the opposition proceedings.  DataQuill reserves all rights to prove other or additional facts as supported by evidence from further investigation including discovery in this action.  DataQuill admits that certain information may have been deemed relevant for submission in the '591 patent application, for example, as background to foreign proceedings (e.g., the European opposition proceedings) or, for example, as relating to foreign art references (e.g., non-English) cited in a foreign prosecution.  DataQuill, however, denies that the information HTC implicitly refers to in these allegations was

1  material to the '591 patent application.  DataQuill also otherwise denies allegations of
2  and HTC's characterizations in this paragraph.  DataQuill incorporates its response to
3  paragraph 42.

4      46.  DataQuill admits its U.S. patent attorney was aware of the opposition
5  proceedings at some time after their filing in Europe.  U.S. patent attorneys are aware of
6  a duty of disclosure under U.S. law; DataQuill however incorporates its response to
7  paragraph 45.  DataQuill's response is based on present investigation and DataQuill
8  reserves all rights to prove other or additional facts as supported by evidence from
9  further investigation including discovery in this action.  DataQuill otherwise denies the
10 allegations of and HTC's characterizations in this paragraph.

11     47.  DataQuill admits the identified IDS and documents were submitted to the
12 U.S. Patent Office.  DataQuill further states that patent counsel deemed certain
13 information may have been relevant for submission in the '591 patent application, for
14 example, as relating to foreign art references (e.g., non-English reference) cited in a
15 foreign prosecution.  DataQuill denies the unjustified conclusions HTC draws as
16 contrary to the facts and law.   DataQuill incorporates its response to paragraph 45.
17 Facts concerning the allegations about the U.S. Patent Office proceedings are a matter of
18 public record, and DataQuill reserves all rights to prove other or additional facts as
19 indicated in the public record and other evidence.  DataQuill otherwise denies the
20 allegations of and HTC's characterizations and conclusions in this paragraph.

21     48.  DataQuill incorporates its response to paragraphs 43 and 45.  DataQuill
22 admits it informed the U.S. Patent Office of the European opposition proceedings.  Facts
23 concerning the allegations about the U.S. Patent Office proceedings are a matter of
24 public record, and DataQuill reserves all rights to prove other or additional facts as
25 indicated in the public record and other evidence.  DataQuill otherwise denies the
26 allegations of and HTC's characterizations and conclusions in this paragraph.
27     49.  DataQuill denies the allegations of this paragraph.
28     50.  DataQuill denies the allegations of this paragraph.

51. (and sub-heading (f)).  Based on present investigation and available information of events, DataQuill admits that the file indicates patent counsel of Morgan & Finnegan (New York, NY) submitted documents in regard to the referenced application on behalf of AVT Audio Visual and records show the filing date alleged. The referenced claim contained part of the quoted text, presented in a different format. The facts concerning the allegations about the U.S. Patent Office proceedings and the content of the application are a matter of public record, and DataQuill reserves all rights to prove other or additional facts as indicated in the public record and other evidence. DataQuill otherwise denies the allegations of and HTC's characterizations and conclusions in this paragraph.

52. Based on present investigation and available information of events, DataQuill admits that the file indicates that an office action mailed to Morgan & Finnegan on October 27, 1999 rejected claim 30 of the AVT patent application in view of the referenced combination of references.  The facts concerning the allegations about the U.S. Patent Office proceedings are a matter of public record, and DataQuill reserves all rights to prove other or additional facts as indicated in the public record and other evidence.  DataQuill otherwise denies the allegations of and HTC's characterizations and conclusions in this paragraph.

53. DataQuill denies the allegations of and HTC's characterizations and conclusions in this paragraph.

54. DataQuill denies the allegations of and HTC's characterizations and conclusions in this paragraph.

55. Based on present investigation and available information of events, DataQuill admits the referenced patent was cited in the prosecution of the patent application of another company, AVT.  The identified Order contains the quoted text in regard to the '591 patent without the bracketed information added by HTC.  The facts concerning the allegations about the U.S. Patent Office proceedings are a matter of public record, and DataQuill reserves all rights to prove other or additional facts as

indicated in the public record and other evidence.  DataQuill otherwise denies the allegations of and HTC's characterizations and conclusions in this paragraph.

56. DataQuill denies the allegations of and HTC's characterizations and conclusions in this paragraph.

57. DataQuill admits the Manual of Patent Examining Procedure includes, *inter alia*, the partially quoted text.  DataQuill otherwise denies the allegations of and HTC's characterizations and conclusions in this paragraph.

58. (and sub-heading (g)).  DataQuill denies the allegations of this paragraph.

59. DataQuill denies the allegations of this paragraph.

60. DataQuill admits there are legal principles governing inventorship and duty of disclosure, but HTC's first sentence is an ambiguous articulation of the law.  DataQuill othewise denies the allegations of and HTC's characterizations and conclusions in this paragraph.

61. (and sub-heading (h)).  DataQuill admits Kyocera served as confidential, and subject to protective order, a supplemental expert report as stated in the record.  The facts concerning the allegations about the U.S. Patent Office proceedings are a matter of public record, and DataQuill reserves all rights to prove other or additional facts as indicated in the public record and other evidence.  HTC's allegations, as with numerous of its allegations in its counterclaim, are selective, misleading and incomplete.  DataQuill otherwise denies the allegations of and HTC's characterizations and conclusions in this paragraph.

62. DataQuill denies the allegations of this paragraph.  DataQuill admits the referenced supplemental expert report had attached certain claim charts as indicated by the document itself.  The facts concerning the allegations about the U.S. Patent Office proceedings are a matter of public record, and DataQuill reserves all rights to prove other or additional facts as indicated in the public record and other evidence.  DataQuill otherwise denies the allegations of and HTC's characterizations and conclusions in this paragraph.

63. DataQuill admits the referenced IDS was submitted, which disclosed multiple documents, including documents referenced in this paragraph. The facts concerning the allegations about the U.S. Patent Office proceedings are a matter of public record, and DataQuill reserves all rights to prove other or additional facts as indicated in the public record and other evidence. DataQuill otherwise denies HTC's characterizations in this paragraph.

64. DataQuill denies the allegations of this paragraph. DataQuill responds, for example, based on present investigation that the IDS included excerpts of Kyocera's Mr. Fletcher's submission that were believed to be non-redundant to other information submitted to the Patent Office and provided as additional background to the Kyocera Litigation; the referenced excerpts of the supplemental report not submitted, for example, were believed to be redundant and/or cumulative in relevant part with other items of information and argument of Kyocera submitted to the Patent Office which had not been treated as confidential. All admissions are based on present investigation and DataQuill reserves all rights to prove other or additional facts as supported by evidence from further investigation including discovery in this action.   The facts concerning the allegations about the U.S. Patent Office proceedings are a matter of public record, and DataQuill reserves all rights to prove other or additional facts as indicated in the public record and other evidence. DataQuill also otherwise denies the allegations of and HTC's characterizations and conclusions in this paragraph.

65. DataQuill denies the allegations of and HTC's characterizations and conclusions in this paragraph.

66. DataQuill denies the allegations of this paragragh.

67. (and sub-heading (i)). DataQuill admits the '591 patent issued from a continuation application related to the '304 patent application. The facts concerning the allegations about the U.S. Patent Office proceedings are a matter of public record, and DataQuill reserves all rights to prove other or additional facts as indicated in the public

1  record and other evidence.  DataQuill otherwise denies the allegations of and HTC's
2  characterizations and conclusions in this paragraph.
3       68.  DataQuill admits HTC's pleading purports to seek the relief described.
4  DataQuill denies that HTC is entitled to such relief, and otherwise denies the allegations
5  of this paragraph.
6       69.  DataQuill incorporates its responses to each preceding allegation.
7       70.  DataQuill denies the allegations of this paragraph.
8       71.  DataQuill admits HTC's pleading purports to request a jury trial "on all
9  issues and claims." DataQuill denies that HTC is entitled to a jury trial "on all issues and
10 claims," and denies the remaining allegations of this paragraph.
11      DataQuill denies HTC's prayer for relief.
12      Plaintiff DataQuill, without affecting the appropriate burden of proof and
13 otherwise without waiver, limitation, prejudice or right to amend, hereby asserts its
14 affirmative defenses:   Defendant's counterclaims are barred in that Plaintiff's actions
15 are privileged, inter alia, under federal law and the laws of the Patent Act.  The
16 counterclaims fail to state claims upon which relief may be granted.  In the alternative,
17 that Defendant's counterclaims are barred by unclean hands, estoppel, and/or failure to
18 mitigate its alleged damage.
19      WHEREFORE, Plaintiff alleges that HTC's allegations in its counterclaims are
20 misleading and incomplete, and/or contrary to law, and unjustified, and Plaintiff
21 hereby prays that HTC's counterclaims be dismissed with prejudice, that Plaintiff's
22 damages be enhanced under 35 U.S.C. § 284; the case be found exceptional against
23 Defendant, that Plaintiff be awarded its costs of this action and reasonable fees,
24 including its costs of defenses to Defendant's counterclaims and, inter alia, reasonable
25 attorneys' fees and expenses permitted under 35 U.S.C. § 285, and that Plaintiff be
26 awarded any other relief this Court deems just and equitable.
27
28

**JURY DEMAND**

DataQuill demands trial by jury on all issues so triable in this action.

August 17, 2010                    Respectfully Submitted,

/s/ Greg Smith            /
Greg Smith
Counsel for Plaintiff / Counterdefendant
DATAQUILL LTD.

**Certificate of Service**

The above document was served this day of August 17, 2010, via email attachment to counsel for HTC Pete Chassman and Gregg Duffey and via operation of the Court's ECF system to all counsel of record in this matter having an email address registered on that system.

/s/ Greg Smith            /
Greg Smith
Counsel for Plaintiff / Counterdefendant
DATAQUILL LTD.