**WILSON TURNER & KOSMO LLP**
FREDERICK W. KOSMO, JR. (138036)
550 West C Street, Suite 1050
San Diego, California  92101
Tel:  619.236.9600
Fax:  619.236.9669
E-mail: fkosmo@wilsonturnerkosmo.com
E-mail: tstevenson@wilsonturnerkosmo.com

**HOWREY LLP**
PETER J. CHASSMAN *(admitted pro hac vice)*
GREGORY A. DUFFEY *(admitted pro hac vice)*
1111 Louisiana, 25th Floor
Houston, Texas  77002
Tel:  713.787.1400
Fax:  713.787.1440
E-mail: chassmanp@howrey.com
E-mail: duffeyg@howrey.com

Attorneys for Defendant and Counterclaimant
HTC Corporation

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DATAQUILL LIMITED,<br><br>       Plaintiff,<br><br>V.<br><br>HIGH TECH COMPUTER CORP.,<br><br>       Defendant.<br><br>HTC CORPORATION,<br><br>       Counterclaimant,<br><br>V.<br><br>DATAQUILL LIMITED,<br><br>       Counterdefendant. | Case No.  08CV543-IEG<br><br>**HTC CORPORATION'S SUMMARY OF THE SPECIFICATIONS OF THE PATENTS-IN-SUIT**<br><br>DEMAND FOR JURY TRIAL<br><br>Complaint filed:  March 24, 2008<br><br>Hearing Date:  February 11, 2011<br>Hearing Time:  9:00 a.m.<br><br>Location:     Courtroom 1<br>Judge:        Hon. Irma E. Gonzalez<br><br>Magistrate<br>Judge:        Hon. Bernard G. Skomal<br><br>Trial Date:   Not Set |

## I. INTRODUCTION

HTC Corporation ("HTC") submits this Summary of the Specification of U.S. Patent Nos. U.S. Patent Nos. 6,058,304 ("the '304 patent") (Ex. A to Document # 64) and 7,139,591 ("the '591 patent") (Ex. B to Document # 64) (collectively "the patents-in-suit")[1] pursuant to Minute Order [Document # 68]. Much of the text in this document was previously presented in HTC's Opening Brief (Document #65 at 1-4, 18-21) and HTC's Responsive Brief (Document # 70 at 13-14). HTC provides this comprehensive description in this single document for the convenience of the Court.[2]

### A. Disclosure and Stated Goals of the Patents

Generally, the specifications[3] for the patents-in-suit describe a data entry system that includes a hand held data entry unit that communicates with a remote processing center such that a user can utilize the data entry unit for making selections. '304 patent at abstract; Figure 7; 11:33-44. Once a user operates the data entry unit to read data or commands, then the data entry unit communicates with to a remote processing center for further processing thereof. '304 patent at abstract; Figure 7; 11:67-12:6.

The specifications of the patents-in-suit disclose a data entry system that includes a hand held data entry unit that has a reading sensor for sensing commands and data. '304 patent abstract, 2:13-16; 4:52-56. The patents-in-suit explain the motivations for the alleged invention including: the bulkiness of prior art data entry systems ('304 patent, 1:23-26, 2:8-10); the need

---

[1] As stated in HTC's Opening Brief [Document # 65] at 1, footnote 3, DataQuill filed the application for the '591 patent as a second continuation of the application for the '304 patent, so the patents-in-suit have specifications substantially identical to one another, with the exception of differences in column and line references. Because the specifications are essentially identical, in this paper, HTC will cite only to the '304 patent (Exhibit A to HTC's Exhibits of Markman Materials [Document # 64] at Exhibit A, pages [1-28]).

[2] The description of aspects of the patents' specifications should not be interpreted as an admission that the patents contain disclosure that satisfies 35 U.S.C. § 112 in any regard, as HTC contends that the patents do not satisfy the requirements of section 112 in a number of regards.

[3] Each of the patents-in-suit is derived from the September 27, 1994 filing date of a PCT application PCT/GB94/02101. As such, only the specification and claims pending in September 27, 1994 form the specification of the patents-in-suit. That is, claims added and or amendments made *after* the September 27, 1994 original filing are not part of the specification and are excluded from this description.

-1-

CASE NO. 08cv543 IEG

1  for two hands to operate the prior art data entry systems ('304 patent, 1:23-26); the problem that
2  an abundance of keys on prior art data entry systems led to keys being pressed inadvertently
3  ('304 patent, 2:8-10).

4  Regarding the hand held unit, the preferred and only disclosed embodiment has the shape
5  of a thick pen that can be held and operated using a single hand and the patents refer to the data
6  entry device as "the pen."  '304 patent, 6:28-35 ("The pen 10 is intended to be held for
7  essentially one handed operation between the thumb and forefinger of either the left or right hand
8  in the manner of a conventional, if rather thicker than usual, pen.").  Figure 1A shows a top view
9  of this embodiment:



The specification describes various types of sensors for use in the data entry system.  One particular category of sensors described in the specification of the patents-in-suit is that of "reading" sensors in that these sensors must be able to "read" items such as data, coded data, and commands.  The most prevalent example of this type of reading sensor as used in the specification is a bar code reader.  *See. e.g.,* '304 patent, 6:39-44.  When a camera is used in the context of a reading sensor, for example, image recognition software is also provide such that the image can be recognized.  '304 patent, 5:36-41; 17:51-57 ("Indeed, in other embodiments of the invention full character recognition (OCR) could be employed where the reading sensor is in the form of a camera or other scanning sensor incorporated in the reading head.  With a camera and appropriate recognition logic, the pen could be used, for example, for fingerprint recognition, either as an aim in itself, or for user validation purposes.").

1    According to the patents, this "pen" contains a reading sensor in a reading head. '304
2 patent, 4:52-56. Examples of reading sensors disclosed by the patent are bar code readers and
3 dot code readers that can read coded data and commands, as well as reading sensors that enable
4 recognizable characters to be traced on a surface in a manner that can be recognized by the
5 device. '304 patent, 3:47-65. Another example is a camera with character or image recognition
6 logic. '304 patent, 5:35-43. The idea is that the reading sensor is capable of recognizing
7 commands or data that it senses and generating a signal that it sends as an input signal to a
8 controller to process and to use to look up information in memory in the pen concerning items
9 represented by the sensed commands or data or items that the user has selected. '304 patent,
10 10:10-36.

11    The pen's user can use the reading sensor to read information from an external object
12 that, in turn, is used to select a "selectable item" and retrieve information from the pen's memory
13 about the selectable item and transmit information about that item to a remote data processing
14 center through a telecommunications interface. '304 patent, 12:12-37. The telecommunications
15 interface enables the pen both to transmit and receive data and commands. '304 patent, 2:51-
16 3:27, 4:20-26.

17    The patent describes an application of the pen for use in the context of a merchandise
18 catalog. '304 patent, 10:35-36, 10:49-61, 11:35-44. Another key part of the pen is a display 20
19 that enables a user to see selections as representations of commands and information. For
20 instance, instead of displaying a bar code number, a description of the product associated with
21 the barcode number could be displayed. 11:40-44. The specification discloses that the display
22 20 can be a touch sensitive display. *See, e.g.,* '304 patent, Figure 8 and 12:65-13:2 ("FIG. 8
23 illustrates another example of pen 10 in accordance with the invention. This example is
24 substantially the same as pen 10 described with reference to FIGS. 1 and 3, apart from the
25 addition of a touch sensitive screen 90 for the display 20.").

26    Of critical importance is that the patent explains how the reading sensor is used to
27 eliminate the need for a keyboard, which the patent regards as problematic. Specifically, the
28 patent discloses a carrier, such as a sheet of material that contains a plurality of data and/or

-3-                                    CASE NO. 08cv543 IEG

command codes that can be recognized by the reading sensor. '304 patent, 5:18-43, 5:52-56. Figure 6 of the '304 patent provides an example of codes on a carrier:





FIG. 6

The pen's reading sensor is used to read these codes in lieu of entry through a conventional keyboard or key pad. The patent also explains that the carrier even could be so extensive in content that "characters and commands could be arranged in the manner of a standard typewriter keyboard layout to facilitate entry of individual codes." '304 patent, 5:53-56. The goal of such an arrangement is to eliminate a keyboard. "By including the command characters as well, the need for a lot of keys on the data entry device can be avoided." '304 patent, 5:33-34. The idea is that, instead of including a problematic keyboard in the pen, the reading sensor could be used to input commands and data instead. "The control card can be thought of as a keyboard extension for the pen 10." '304 patent, 9:60-65.

The patent further explains that the objective of minimizing the number of keys is accomplished through both the inclusion of the reading sensor and only one or two switches for performing selected functions:

> By arranging that the reading sensor can be used for the input of commands for controlling the hand held unit, the number of user input means (e.g., keys) can be kept to a minimum, reducing the possibility of inadvertent operation. Preferably, there are provided one or two manually operable switches for scrolling the display in a first and/or second direction for selectively displaying a plurality of data stored in the [memory] storage. The scrolling of the display enables a large number of items to be accessed with a relatively compact display. <u>In a preferred embodiment of the invention, the first and/or second switches are the only switches on the hand held unit</u>. Preferably also, operation of the first and/or second switches in predetermined operational states of the hand held unit causes predetermined functions other than scrolling functions to be performed (e.g., powering-up or powering-down of the hand held unit). By the provision of only two keys

1     on the hand held unit, the possibility of accidentally operating an incorrect key can be reduced, and also the hand held unit can be kept particularly compact.

2 '304 patent, 3:28-46 (emphasis added).  The switches, however, are not a part of the reading

3 sensor.  "The switches 22 and 24 are used to control basic operations of the data entry system

4 and for control of the sequential display of stored information (scrolling of the display)…".  '304

5 patent, 7:15-17.

6     The '304 patent specification describes the process of initially storing, in the data entry

7 device, description information from one or more merchandising catalogs.  *See* '304 patent,

8 10:35-39.  The complete catalog of data can be downloaded over the telecommunications

9 interface into the data entry device.  '304 patent, 16:64-67 ("In the preferred embodiments

10 described above, catalogue data is down-loaded into the pen from a remote processing system by

11 telephone, over the telecommunications interface.").  Or, as an alternative to downloading a

12 complete catalog into the pen via the telecommunication interface, other data entry means could

13 be used to get the catalog information into the pen.  '304 patent, 16:67-17:4 ("However, as an

14 alternative to down-loading, for example a complete catalogue, via the telephone line, other data

15 entry means could be provided for the bulk of the data, the telephone line then only being used

16 for updating the stored data.").  Then, the telecommunication interface is used only for updating

17 the data in the pen.  *See* '304 patent, 16:64-17:7 (describing the telecommunication interface

18 being used only for updating the stored data).  "For example, the pen and/or the base unit as

19 appropriate could be provided with a socket or connector or reader for a memory device (such as

20 a plug-in ROM, a smart card, etc.)."  '304 patent, 17:4-7.

21     Regardless of how the original catalog data is stored in the device, once the original

22 catalog data is stored in the device, then, information related to a selected item, for example, may

23 be updated by sending only the information that has changed -- and not information that has not

24 changed -- from the remote processing center via the telecommunication interface.  *See* '304

25 patent, 10:49-61 ("However, through the use of rewritable memory and control logic enabling

26 the memory to be updated using data downloaded from the remote processing center, it is

27 possible to keep the pen's memory up to date on a full list of merchandisable items, including

28 product description, availability, price, etc.  Then, upon reading a bar code relating to an item

-5-     CASE NO. 08cv543 IEG

stored in memory, the display on the pen can indicate a description of the item corresponding to the code read, its availability, and price.  If the code read [by a reading sensor] is not recognized, for example, the pen can be programmed automatically to call up the remote processing center to check on whether an update of the pen's storage is needed when the pen is replaced in the base unit.").  Each time information in the pen becomes obsolete and needs to be updated, the entire catalog of information is *not* retransmitted to the pen according the '304 patent: only the information that has changed from the information previously stored in memory is transmitted by the remote processing center and downloaded into the pen to update the information in the pen.

Figure 7 shows a flow chart of the use of the data entry unit as described in the patent.



FIG. 7

In operation, once the various preliminary steps in S1-S4 are performed, the user may select various items of merchandise by scanning the bar code for the desired merchandise selection followed by a "command" bar code, such as "Enter," "Clear," "Quantity," etc., as appropriate.  '304 patent, 11:33-38.  If the bar code is successfully scanned, the good read indicator 26 lights and the data read by the bar code reader is displayed on the screen of the data entry unit.  '304 patent, 11:38-40. "Either the alphanumeric value of the bar code read is displayed, or if a description of the item corresponding to the bar code value is stored in the RAM or the ROM [of the data entry unit], then this [description information] can be displayed instead of or as well as the bar code value."  '304 patent, 11:38-44.  Step S5 in Figure 7 is repeated until all the desired items have been entered or the memory becomes full.  '304 patent, 11:45-48.  After entering the desired items, a phone number is entered followed by the command "Phone" and a remote processing center is called.  '304 patent, 11:56-62.  The pen is then placed in the cradle and information from the RAM in the pen is transferred to the remote processing center for further processing.  '304 patent, 11:63-12:11.  The software in the pen is described as permitting loading of data from the processing center into the pen.  '304 patent, 12:35-37.

## II.   CONCLUSION

HTC is willing to provide any additional information that the Court may request before the *Markman* Hearing scheduled for February 11, 2011.

Dated: January 10, 2011                                          Respectfully submitted,

**HOWREY LLP**

By:     /s/  Peter J. Chassman,

**HOWREY LLP**
PETER J. CHASSMAN
*(admitted pro hac vice)*
GREGORY A. DUFFEY
*(admitted pro hac vice)*
1111 Louisiana, 25th Floor
Houston, Texas  77002
Telephone:  713.787.1400

|   |   |
|---|---|
| 1 | Facsimile:   713.787.1440 |
|   | E-mail: chassmanp@howrey.com |
|   | E-mail: duffeyg@howrey.com |
| 2 |   |
| 3 | FREDERICK W. KOSMO, JR. |
|   | THERESA OSTERMAN STEVENSON |
|   | 550 West C Street, Suite 1050 |
| 4 | San Diego, California  92101 |
|   | Tel:  619.236.9600 |
| 5 | Fax:  619.236.9669 |
|   | E-mail: fkosmo@wilsonturnerkosmo.com |

*Attorneys for Defendant and Counterclaimant*
*HTC CORPORATION*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on January 10, 2011 to all counsel of record who are deemed to have consented to electronic service via the Courts CM/ECF system per Civ LR 5.4(d). Any other counsel of record will be served by U.S. mail.

                                                  */s/* Peter J. Chassman
                                                  Peter J. Chassman