**WILSON TURNER & KOSMO LLP**
FREDERICK W. KOSMO, JR. (138036)
550 West C Street, Suite 1050
San Diego, California 92101
Tel: 619.236.9600
Fax: 619.236.9669
E-mail: fkosmo@wilsonturnerkosmo.com
E-mail: tstevenson@wilsonturnerkosmo.com

**HOWREY LLP**
PETER J. CHASSMAN *(admitted pro hac vice)*
GREGORY A. DUFFEY *(admitted pro hac vice)*
1111 Louisiana, 25th Floor
Houston, Texas 77002
Tel: 713.787.1400
Fax: 713.787.1440
E-mail: chassmanp@howrey.com
E-mail: duffeyg@howrey.com

Attorneys for Defendant and Counterclaimant
HTC Corporation

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DATAQUILL LIMITED,<br><br>      Plaintiff,<br><br>V.<br><br>HIGH TECH COMPUTER CORP.,<br><br>      Defendant.<br><br>HTC CORPORATION,<br><br>      Counterclaimant,<br><br>V.<br><br>DATAQUILL LIMITED,<br><br>      Counterdefendant. | Case No. 08CV543-IEG<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HTC'S MOTION TO LIMIT THE NUMBER OF ASSERTED PATENT CLAIMS**<br><br>DEMAND FOR JURY TRIAL<br><br>Complaint filed: March 24, 2008<br><br>Date:        February 11, 2011<br>Time:        9:00 a.m.<br><br>Location:   Courtroom 1<br>Judge:       Hon. Irma E. Gonzalez<br><br>Magistrate<br>Judge:       Hon. Bernard G. Skomal<br><br>Trial Date:  Not Set |

## I. INTRODUCTION

This action relates to Plaintiff DataQuill Limited's assertion of two patents – U.S. Patent Nos. 6,058,304 ("the '304 patent") and 7,139,591 ("the '591 patent") – against HTC Corporation ("HTC"). These patents share a common specification and many common claim terms. Both patents have been through the *ex parte* reexamination process before the United States Patent and Trademark Office ("USPTO"). The reexamination certificate for the '304 patent includes 85 claims, and the reexamination certificate for the '591 patent includes 62 claims. Some of those claims are independent, and some are dependent. Some of the dependent claims are called "multiple-dependent claims" in that they are worded so that each multiple-dependent claim can depend from several other claims, resulting in a complicated tangle of interrelated claims. In its July 8, 2010 infringement contentions, DataQuill asserted 69 claims from these two patents against HTC – 51 claims from the '304 patent and 18 claims from the '591 patent.

DataQuill's assertion of 69 claims alone would be unreasonable and unduly burdensome. However, that number of claims is made much more burdensome by the fact that DataQuill has asserted a number of multiple-dependent claims. As explained above, a multiple-dependent claim depends, in the alternative, from more than one other claim. An example of an asserted multiple-dependent claim is claim 9 of the '304 patent:

> 9. A data entry device according to any of claims **[1,2]** *85, 86, 94, 97, 98, 100, 101, 103* or **[3]** *104*, wherein said [sic] dislay screen comprises a touch sensitive screen forming a said reading sensor, said controller being arranged to be responsive to a location at which said screen is touched for user input.

Price Decl.[1], Exhibit 1 ('304 patent reexamination certificate), at col. 1, lines 52-57 on p. 14. DataQuill has asserted this claim in its infringement contentions through its dependency from claims 85, 86, 97, 98, 100, and 101. *See* Price Decl., Exhibit 2 (DataQuill's Disclosure of Preliminary Infringement Contentions under Local Rule 3.1 Exhibit A), at page 91. Because of the multiple dependencies, DataQuill's assertion of this single claim is, effectively, *six* asserted claims for

---

[1] Each of the attachments discussed herein is authenticated in the declaration of Phillip Price ("Price Decl.") filed concurrently.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HTC'S MOTION TO LIMIT THE NUMBER OF ASSERTED PATENT CLAIMS**

purposes of infringement and invalidity analyses.[2]  As it can be seen, this use of multiple-dependent claims further complicates the analysis related to claim 9, because of multiple claim dependencies. In total, this technique, and DataQuill's assertion of so many multiple-dependent claims effectively swells the already expansive list of asserted claims from 69 claims to *159 effective claims*.

Moreover, DataQuill has accused as many as 38 products of infringing each asserted claim. If DataQuill were going to attempt to prove infringement of each asserted claim by each product accused of infringing that particular claim, it would need to establish over 3,300 alleged cases of infringement.  Such a task would be impractical for trial.

So far, DataQuill has refused HTC's requests to limit the asserted claims to a reasonable number during the discovery and claim-construction stages of this case.  By limiting the number of claims at this point, the Court would exercise judicial economy by trimming the case to a manageable size.  In addition, the excessive number of claims now poses an undue burden on HTC by requiring it to spend an excessive amount of time and resources preparing its defenses.  Accordingly, HTC requests that the Court order DataQuill to limit its asserted claims in this case to no more than 10 claims, including dependencies, within five business days after the Court issues its claim construction order.

## II. PROCEDURAL HISTORY

In its original Complaint of March 24, 2008, DataQuill alleged that HTC infringed the '304 patent and the '591 patent (collectively, the "patents-in-suit").  In its original Answer [Docket No. 7], HTC asserted the defenses of non-infringement, invalidity, unenforceability, prosecution history estoppel, license, and no irreparable harm, and HTC filed counterclaims seeking declarations of non-infringement, invalidity, and unenforceability of the patents-in-suit.

---

[2]  For example, the asserted claims based upon claim 9 alone are: (1) claim 9 as it depends from claim 85, (2) claim 9 as it depends from claim 86, (3) claim 9 as it depends from claim 97, (4) claim 9 as it depends from claim 98, (5) claim 9 as it depends from claim 100, and (6) claim 9 as it depends from claim 101.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HTC'S MOTION TO LIMIT THE NUMBER OF ASSERTED PATENT CLAIMS**

Before DataQuill filed the present lawsuit, the USPTO granted a request for reexamination of each of the patents-in-suit. On May 14, 2009, upon HTC's request, this Court stayed the present action in view of the reexaminations of the patents-in-suit. The USPTO issued a reexamination certificate for the '591 patent on October 27, 2009 and a reexamination certificate for the '304 patent on April 13, 2010. Thus, the reexamination proceedings for both of the patents-in-suit have concluded. On April 1, 2010, the Court lifted the stay and referred this case to Magistrate Judge William V. Gallo for case management. On April 30, 2010, the Court transferred this case from Magistrate Gallo to Magistrate Judge Bernard G. Skomal.

On July 8, 2010, DataQuill served its Preliminary Infringement Contentions. Those contentions included DataQuill's assertion of 69 claims against HTC – 51 claims of the '304 patent and 18 claims of the '591 patent. The list swells to 159 effective asserted claims when it is considered that a number of the asserted claims are written in multiple-dependent form, which means each claim can represent more than one unique claim because the limitations of the claim change according to which claim it depends from.[3] DataQuill accused up to 38 products of infringing each asserted claim.

Presently the parties have filed claim construction briefings and are awaiting the claim construction hearing with the Court. HTC files this motion seeking for the Court to require DataQuill to limit the number of asserted claims to 10, including dependencies, within five business days of this Court's claim construction order.

### III. ARGUMENT

#### A. The Court Should Exercise its Power to Limit the Number of Asserted Claims as a Matter of Judicial Economy.

---

[3] For example, multiple-dependent claim 9 as discussed above has different limitations if it is asserted as it depends from claim 85 than the limitations it would contain if it is asserted as it depends from claim 101, which results in claim 9 representing at least two effective asserted claims: (1) claim 9 as it depends from claim 85 and (2) claim 9 as it depends from claim 101. DataQuill has asserted both of these dependencies from claim 9, among others.

This Court, like every court, has the inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). The Federal Rules of Civil Procedure specifically provide that this Court may "adopt[] special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems." § 16(c)(2)(L).

Here, the Court must weigh DataQuill's intention to assert each of, effectively, 159 claims against as many as 38 products, against the burden on HTC of defending against such a barrage of claims through discovery and trial and, ultimately, the burden on a jury of considering over 3000 claim-product combinations and an analogous number of prior art invalidity defense combinations. Reducing the number of asserted claims would still provide DataQuill with a fair opportunity to present its case at trial. For example, even with a limitation to 10 patent claims, given DataQuill's assertions of some claims against, for example, 38 products, Data Quill still could present 380 separate claim-product combination allegations of infringement. While still a large number, this would substantially reduce the burden on the Court, the jury, and HTC. A balancing of interests weighs heavily in favor of limiting the number of asserted claims to 10, including dependencies.

Limiting the number of asserted patent claims need not limit the amount of damages that DataQuill potentially could recover, in that DataQuill has asserted many claims across substantial numbers of accused products, if not all accused products. One would expect that DataQuill could fairly assert its position with 10 claims. As one court succinctly explained: "The amount of damages is not affected by the number of claims infringed because the patent is infringed regardless of whether one, some, or all of its claims are infringed." *Ziggity Sys., Inc. v. Val Watering Sys.,* 769 F. Supp. 752, 819 (E.D. Pa. 1990). Thus, DataQuill would not be prejudiced by limiting the number of asserted claims.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HTC'S MOTION TO LIMIT THE NUMBER OF ASSERTED PATENT CLAIMS**

Certainly, DataQuill should be able to make a reasoned decision as to what it believes are the strongest claims to assert based on both publicly available information and the discovery that HTC has provided, especially given that this case has been pending for over two years.

Balancing the interests of the parties with the necessity of judicial economy leads to the conclusion that the Court should limit the number of asserted claims. HTC is not asking the Court to place unreasonable restrictions on the number of asserted claims. Indeed, a limitation to 10 for claim construction and trial is a fair number.

### B. HTC's Request is Consistent with the Practices of Many Courts to Limit the Number of Asserted Patent Claims.

District courts in California and around the country have recognized that allowing patentees to assert excessive numbers of patent claims is unreasonable and can undermine the efficient resolution of litigation.

For example, in *Fenster Family Patent Holdings, Inc. v. Siemens Medical Solutions USA, Inc.*, No. 04-0038 JJF, 2005 U.S. Dist. LEXIS 20788 (D. Del. Sep. 20, 2005), the plaintiff asserted eight unrelated patents – and 90 patent claims – against 49 accused products. *Id.* at *3 and *6. The plaintiff refused to limit the number of asserted claims, contending that it would "likely limit them after full discovery." *Id.* at *8. Upon motion by the defendants to limit the number of asserted claims, the court found that asserting 90 patent claims was unreasonable, and thus, restricted the number of patent claims to 10 claims, the same number requested here by HTC. *Id.* Given that the plaintiff was asserting eight separate patents, the court's ruling restricted the plaintiff to just over one claim per patent – far more restrictive than what HTC seeks here.

As another example of courts limiting the number of asserted patent claims in past cases, in the Eastern District of Texas, Judge Clark has allowed only three claims per patent and Judge Folsom has limited the number of claims in a case to 10 total, both limits applying before the claim construction process began. *See Hearing Components, Inc. v. Shure, Inc.*, No. 9:07-CV-104, 2008

U.S. Dist. LEXIS 109230, at *3 (E.D. Tex. June 13, 2008) and Price Decl., Exhibit 3 (the Docket Control Order from *Kawasaki Heavy Industries, Ltd. v. Bombardier Recreational Products, Inc.*, Case No. 5:06-cv-00222, Docket Entry Nos. 38 and 39 (E.D.Tex. Jan. 22, 2007)), at step 8 on p. 100. As another example, in *Verizon California Inc. v. Ronald A. Katz Technology Licensing, L.P.,* 326 F. Supp. 2d 1060, 1066 (C.D. Cal. 2003), the court limited the plaintiff to a total of three claims per patent for its infringement case, which, again, is more restrictive than what HTC seeks by the present motion. Also, in *In re Katz*, No. 2:07-ml-01816-RGK-FFM (C.D. Cal. Aug. 31, 2007), where the plaintiff asserted 31 patents containing a total of 1,975 claims, the Court set an initial limit of just eight claims per group of patents containing the same specification (noting that some of the specifications were common among asserted patents) and an eventual limit of just two claims for each. *See* Price Decl., Exhibit 4 (*In re Katz,* Case No. 2:07-ml-01816-RGK-FFM, Docket Entry No. 221 (C.D. Cal. Aug. 31, 2007)), at pp. 106, 108, and 109.

The limit that HTC seeks here – 10 asserted claims total, or an average of five asserted claims per patent – is in line with or is more generous than the limits imposed by other courts discussed above.

## IV. CONCLUSION

For the reasons stated above, HTC respectfully requests that the Court grant HTC's Motion to Limit the Number of Asserted Patent Claims and limit Plaintiff DataQuill to no more than a total of ten asserted patent claims, including dependencies, against HTC within five business days of this Court's claim construction order.

Dated: January 11, 2011                               Respectfully submitted,

**HOWREY LLP**

By:   /s/  Peter J. Chassman
PETER J. CHASSMAN
*(admitted pro hac vice)*

7                          CASE NO. 08cv543 IEG

GREGORY A. DUFFEY
*(admitted pro hac vice)*
1111 Louisiana, 25th Floor
Houston, Texas 77002
Telephone: 713.787.1400
Facsimile: 713.787.1440
E-mail: chassmanp@howrey.com
E-mail: duffeyg@howrey.com

**WILSON TURNER & KOSMO LLP**
FREDERICK W. KOSMO, JR.
THERESA OSTERMAN STEVENSON
550 West C Street, Suite 1050
San Diego, California 92101
Tel: 619.236.9600
Fax: 619.236.9669
E-mail: fkosmo@wilsonturnerkosmo.com


*Attorneys for Defendant and Counterclaimant
HTC CORPORATION*

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HTC'S MOTION TO LIMIT THE NUMBER OF ASSERTED PATENT CLAIMS**