1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                        SOUTHERN DISTRICT OF CALIFORNIA

10

11   DATAQUILL LIMITED,                          Civil No.    08cv543-IEG (BGS)

12                              Plaintiff,        **ORDER DENYING DATAQUILL'S
                                                  MOTION TO STRIKE EXPERT REPORT**
         v.
13                                                **[Doc. No. 112.]**
     HIGH TECH COMPUTER CORP.,
14
                             Defendant.
15   HTC CORPORATION,

16                         Counter-Plaintiff,

17       v.

18   DATAQUILL LIMITED,

19                       Counter-Defendant

20

21       On August 3, 2011, DataQuill filed, ex parte, a motion to strike Mark Lanning's expert report.

22   (Doc. No. 112.)  HTC filed an opposition on August 10, 2011.  (Doc. No. 115.)  On August 12, 2011,

23   the Hon. Irma E. Gonzalez referred the matter to the undersigned.  (Doc. No. 116.)  The Court held a

24   telephonic discovery hearing on August 16, 2011.  Greg Smith, Esq. argued on behalf of DataQuill and

25   Pete Chassman, Esq. argued on behalf of HTC.  For the reasons stated during the hearing and as set

26   forth below, the Court **DENIES** DataQuill's motion to strike Mark Lanning's expert report.

27   ///

28   ///

                                                    1                                      08cv543-IEG

1    **RELEVANT BACKGROUND**

2         This is a patent infringement case, and there are two patents-in-suit: U.S. Patents Nos.

3    6,058,304 ("the '304 Patent") and 7,139,591 ("the '591 Patent").  In the present action DataQuill

4    continues to assert 80 patent claims, each containing numerous claim elements.  (Doc. No. 115 at 5.)

5    HTC previously served invalidity contentions based on DataQuill's original assertion of 159 effective

6    claims.  (Doc. No. 73 at 3.)  It took over four thousand pages for HTC to present those contentions.  (*Id*.)

7    Because HTC believed that allowing DataQuill to proceed to trial on more than 10 claims would be

8    unreasonable and impractical, in January 2011 it filed a motion to limit the number of asserted patent

9    claims.  (Doc. No. 73.)  HTC argued that continuing to trial on a large number of claims would be

10   substantially burdensome on the parties, the court and the jury.  (*Id.*)  HTC further argued that due to the

11   high number of asserted claims the jury would be forced to consider an immense "number of prior art

12   invalidity defense combinations."  (*Id*. at 5.)  DataQuill opposed the motion, contending that the number

13   of asserted claims would not be unmanageable, and implicitly accepted that HTC would continue to

14   litigate its invalidity case on the vast number of theories disclosed in its contentions.  (Doc. No. 74 at 5.)

15   Ultimately, Judge Gonzalez denied HTC's motion without prejudice.  (Doc. No. 87.)

16        HTC designated Mark Lanning as its expert on invalidity.  Pursuant to Fed. R. Civ. P.

17   26(a)(2)(B), Mr. Lanning produced a written report on July 18, 2011.  (Doc. No. 115 at 2.)  Mr.

18   Lanning's report sets forth his "opinions as to the invalidity of the Asserted Claims of the Patents-in-

19   Suit, and the underlying bases and reasons for those opinions."  (Lanning Report, Doc. No. 114 at 10.)

20   Mr. Lanning opined that the patents are invalid based on anticipation, obviousness, lack of enablement,

21   and improper inventorship.  ( *Id.* at 13-16.)  Section eight of the report contains Mr. Lanning's opinion

22   that the invention of the patents-in-suit are invalid based on prior art.  (*Id*. at 47.)  The report goes on to

23   describe, in detail, the "obvious combinations of prior art that render the Asserted Claims of the Patents-

24   in-Suit invalid."  (*Id*. at 57-70.)  The appendix to Mr. Lanning's report contains further descriptions and

25   analyses of how certain prior art, either alone or in combination with other prior art, meet the limitations

26   of the asserted claims.  (*See* Appx. to Lanning Report, Doc. Nos. 112 and 114.)

27        DataQuill filed the instant motion to strike on August 3, 2011.  (Doc. No. 112.)  DataQuill seeks

28   an order from this Court striking Mr. Lanning's entire report for failure to comply with Fed. R. Civ. P.

1  26(a)(2)(B).  (*Id*.)  DataQuill contends that the report "fails to state the testimony the witness is expected

2  to present during direct examination at trial" because it identifies an "unwieldy" number of invalidity

3  theories."  (Doc. No. 112 at 2-3.)

4  <u>**APPLICABLE LEGAL STANDARD**</u>

5  Federal Rule of Civil Procedure 26(a)(2) sets forth the required disclosures relating to expert

6  testimony.  Fed. R. Civ. P. 26(a)(2).  Rule 26(a)(2)(B) mandates that in addition to disclosing the

7  identity of the expert witness, the witness must produce a written report containing:

8  (i) a complete statement of all opinions the witness will express and the basis and reasons
for them;

9  (ii) the facts or data considered by the witness in forming them;
(iii) any exhibits that will be used to summarize or support them;

10  (iv) the witness's qualifications, including a list of all publications authored in the previous 10
years;

11  (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert
at trial or deposition; and

12  (vi) a statement of the compensation to be paid for the study and testimony in the case.

13  Federal Rule of Civil Procedure 37(c)(1) sets forth the consequences for failing to "provide information

14  or identify a witness as required by Rule 26(a)."  Fed. R. Civ. P. 37(c)(1).  Pursuant to Rule 37(c)(1),

15  "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing,

16  or at a trial, unless the failure was substantially justified or is harmless."  (*Id*.)

17  <u>**HTC'S COMPLIANCE WITH RULE 26(A)(2)(B)**</u>

18  DataQuill contends that Mr. Lanning's report fails to "state the testimony the witness is expected

19  to present during direct examination at trial."  (Doc. No. 112 at 2.)  DataQuill, however, does not argue

20  that Mr. Lanning's report is deficient for failing to provide enough information, but rather complains

21  that the expert report contains too much information.  (*Id*. at 2-4.)  DataQuill argues that because it is not

22  feasible for Mr. Lanning to present all of the bases for his invalidity opinions during trial, the fact that

23  his report includes all of these opinions means that the report does not comply with Rule 26.  (*Id*. at 2.)

24  But DataQuill has not provided the Court with any authority to support its argument.  All of the cases

25  DataQuill cites in support of its contention that Mr. Lanning's report should be stricken are inapposite.

26  In the cases DataQuill relies on, the expert reports at issue failed to comply with Rule 26(a)(2)(B)

27  because they were untimely, lacked sufficient detail, failed to include the reasons and bases for opinions,

28  or were otherwise incomplete.  *See Roberts v. Galen of Virginia*, 325 F.3d 776 (6th Cir. 2003);

1   *Jacobesen v. Deseret Book Co.*, 287 F.3d 936 (10th Cir. 2002); *Salgado v. Gen. Motors Corp.*, 150 F.3d

2   735 (7th Cir. 1998); *Cohlmia v. Ardent Heath Services, LLC*, 254 F.R.D. 426 (N.D. Okla. 2008); *United*

3   *States ex rel. O'Connell v. Chapman Univ.*, 245 F.R.D. 652 (C.D. Cal. 2007).   None of these cases

4   determined that an expert report violated Rule 26's disclosure requirement for being overly detailed and

5   thorough.

6          After conducting an independent search, the Court is also unable to locate authority endorsing

7   DataQuill's position.   Rather, Rule 26 and the cases addressing its requirements all stress the necessity

8   for the expert to prepare a detailed and complete report of his or her opinions, conclusions, and the

9   reasons for them.[1]   Fed. R. Civ. P. 26(a)(2)(B) (Adv. Comm. Notes to 1993 Amendments).   In fact,

10  Rule 26 requires full disclosure and Rule 37(c)(1) provides a sanction for producing an incomplete

11  report: expert testimony not disclosed in the written report may be excluded from trial.   *Id.*   The purpose

12  behind amending Rule 26 and requiring experts to serve written reports was to prevent parties from

13  serving the "sketchy and vague" responses to interrogatories that had become the norm.   *Id.*; *see also*

14  *Sierra Club*

15  *v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996).   Mr. Lanning's report is anything but "sketchy

16  and vague."   In short, Rule 26 required Mr. Lanning to prepare an exhaustive report in order to preserve

17  all of HTC's invalidity arguments.

18         Moreover, DataQuill's motion does not allege that Mr. Lanning's report is invalid because it

19  includes new opinions not previously disclosed in HTC's invalidity contentions.   According to HTC, the

20  invalidity opinions revealed in Mr. Lanning's report are actually "pared-down" from what it disclosed in

21  September 2010.   (Doc. No. 115 at 3.)   Hence, this is not a case where one party—HTC—is

22  sandbagging an opposing party with new evidence and new theories at the eleventh hour.   If anything,

23  Mr. Lanning's report provides DataQuill with the entire substance of what he might say at trial.   A

24  thorough reading of the report will allow DataQuill to adequately prepare to rebut and cross-examine

25  Mr. Lanning about his opinions.

26

27         [1] Another reason DataQuill objects to Mr. Lanning's report is because it was accompanied by
    "36 exhibits totaling 51,749 pages". (*Id.* at 4.)   But the rule explicitly requires the report to disclose
    "any exhibits or charts that summarize or support the expert's opinions." Fed. R. Civ. P. 26(a)(2)(B)(iii)
28  Advisory Comm. Notes to 1993 Amendments. Consequently, any exhibits not attached to the report
    would be subject to a motion to strike for failure to comply with the plain meaning of the rule.

1    After reviewing Mr. Lanning's report, the Court finds that it is detailed, complete, and his

2  opinions are supported with extensive analysis and references to specific prior art. Thus, the Court

3  concludes that the report complies with Rule 26(a)(2)(B) and is sufficient to allow DataQuill to

4  adequately prepare for cross-examination.  That said, the Court understands that it may have been

5  difficult for DataQuill's invalidity expert to prepare a report rebutting all of HTC's asserted invalidity

6  opinions in the time the schedule allowed.  Therefore, the Court will grant DataQuill additional time in

7  order to supplement its invalidity expert's rebuttal report.  Although DataQuill served its expert's

8  invalidity report as required on August 15, 2011, DataQuill may choose to supplement its invalidity

9  report on or before **September 9, 2011.**

10    CONCLUSION

11    For all of the reasons stated herein and during the hearing, the Court DENIES DataQuill's

12  motion to strike Mr. Lanning's expert report.  DataQuill, however, may supplement its rebuttal expert's

13  report on invalidity on or before **September 9, 2011.**

14    IT IS SO ORDERED.

15  DATED: August 26, 2011

16    Hon. Bernard G. Skomal
    U.S. Magistrate Judge

17

18

19

20

21

22

23

24

25

26

27

28

08cv543-IEG