**WILSON TURNER & KOSMO LLP**
FREDERICK W. KOSMO, JR. (138036)
550 West C Street, Suite 1050
San Diego, California 92101
Tel: (619) 236-9600
Fax: (619) 236-9669
E-mail: fkosmo@wilsonturnerkosmo.com

**WINSTON & STRAWN LLP**
PETER J. CHASSMAN *(admitted pro hac vice)*
GREGORY A. DUFFEY *(admitted pro hac vice)*
1111 Louisiana, 25th Floor
Houston, Texas 77002
Tel: (713) 651-2600
Fax: (713) 651-2700
E-mail: pchassman@winston.com
E-mail: gduffey@winston.com

**KEKER & VAN NEST LLP**
LEO L. LAM (181861)
EUGENE M. PAIGE (202849)
633 Battery Street
San Francisco, CA 94111
Tel: (415) 391-5400
Fax: (415) 397-7188
E-mail: LLam@kvn.com
E-mail: EPaige@kvn.com

Attorneys for Defendant and Counterclaimant
HTC Corporation

### UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DATAQUILL LIMITED,<br><br>        Plaintiff,<br><br>  v.<br><br>HIGH TECH COMPUTER CORP.,<br><br>        Defendant.<br>_____<br>HTC CORPORATION<br><br>        Counterclaimant,<br><br>  v.<br><br>DATAQUILL LIMITED,<br><br>        Counterdefendant. | Case No. 3:08-cv-00543-IEG-BGS<br><br>**HTC CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO EXCLUDE THE OPINIONS OF JOSEPH GEMINI PURSUANT TO FEDERAL RULE OF EVIDENCE 702 [UNDER SEAL]**<br>Date: November 18, 2011<br>Time: 9:00 a.m.<br><br>Complaint filed: March 24, 2008<br>Location: Courtroom 1<br>Judge:  Hon. Irma E. Gonzalez<br>Magistrate<br>Judge:  Hon. Bernard G. Skomal<br>Trial Date: Not Set |

581038.01

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ...................................................................................................1

II.     STATEMENT OF FACTS ......................................................................................2

        A.      Accused HTC Products And Functionality..................................................2

        B.      REDACTED ........................................................3

        C.      DataQuill's Damages Theory ......................................................................4

III.    LEGAL STANDARDS ...........................................................................................5

        A.      Legal Standard For The Admission Of Expert Testimony ..........................5

        B.      Legal Standards Governing Damages In The Form Of A "Reasonable
                Royalty" ......................................................................................................5

IV.     ARGUMENT ..........................................................................................................7

        A.      REDACTED ...................7

        B.      REDACTED ..........................13

        C.      REDACTED ......................15

V.      CONCLUSION.......................................................................................................17

581038.01

# TABLE OF AUTHORITIES

## Cases

*Avila v. Willits Envt'l Remediation Trust,*
  633 F.3d 828 (9th Cir. 2011) ....................................................................... 5

*Bourjaily v. United States,*
  483 U.S. 171 (1987)........................................................................................ 5

*Bowling v. Hasbro, Inc.,*
  No. 05-229S, 2008 WL 717741 (D. R.I. Mar. 7, 2008)........................ 12, 13, 15

*Cornell Univ. v. Hewlett-Packard Co.,*
  609 F. Supp. 2d 279 (N.D.N.Y. 2009) ........................................................ 17

*Daubert v. Merrill Dow Pharm., Inc.,*
  509 U.S. 579 (1993) .............................................................................. 5, 6, 17

*Domingo ex rel. Domingo v. T.K.,*
  289 F.3d 600 (9th Cir. 2002) ....................................................................... 5

*DSU Med. v. JMS Co., Ltd.,*
  296 F. Supp. 2d 1140 (N.D. Cal. 2003) ...................................................... 5

*Fenner Invs., Ltd. v. Hewlett-Packard Co.,*
  No. 6:08-CV-273, 2010 WL 3911372 (E.D. Tex. April 16, 2010) ............... 10

*Garretson v. Clark,*
  111 U.S. 120 (1884) ..................................................................................... 15

*Gen. Elec. Co. v. Joiner,*
  522 U.S. 136 (1997) ...................................................................................... 5

*Georgia-Pacific Corp. v. U.S. Plywood Corp.,*
  318 F. Supp. 1116 (S.D.N.Y. 1970) ........................................ 6, 7, 8, 9, 12, 13

*IEX Corp. v. Blue Pumpkin Software, Inc.,*
  No. 4:01CV16, 2005 WL 6426934 (E.D. Tex. Dec. 14, 2005) ..................... 12

*IP Innovation, LLC v. Red Hat, Inc.,*
  705 F. Supp. 2d 687 (E.D. Tex. 2010) .............................................. 9, 13, 16

*Lucent Techs., Inc. v. Gateway, Inc.,*
  580 F.3d 1301 (Fed. Cir. 2009) ...................................................... 6, 8, 9, 10, 16

*Mirror Worlds, LLC v. Apple, Inc.,*
  No. 6:08CV88, 2011 WL 1304488 (E.D. Tex. April 4, 2011) ...................... 15

*Oracle Am., Inc. v. Google, Inc.,*
  No. C 10-03561 WHA, 2011 WL 2976449 (N.D. Cal. July 22, 2011) ......... 16

*Rite-Hite Corp. v. Kelley Co., Inc.,*
  56 F.3d 1538 (Fed. Cir. 1995) ..................................................................... 16

*Trell v. Marlee Elecs. Corp.,*
  912 F.2d 1443 (Fed. Cir. 1990) ................................................................... 9

*Uniloc USA, Inc. v. Microsoft Corp.,*
  632 F.3d 1292 (Fed. Cir. 2011) ....................................................... 1, 6, 8, 15, 16

*Wi-LAN, Inc. v. Research in Motion Corp.,*
  No. 10cv859-W (CAB), 2010 WL 2998850 (S.D. Cal. July 28, 2010)......... 11

*Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.,*
  609 F.3d 1308 (Fed. Cir. 2010) ................................................................... 9

ii

581038.01

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Statutes**

35 U.S.C. § 284...................................................................................................... 6

**Rules**

Fed. R. Evid. 702 ................................................................................................... 5

iii

581038.01

# I.   INTRODUCTION

DataQuill's damages expert Joseph Gemini believes ███████ REDACTED ███████

███████████████████████████████████████████████

██████████████████ { REDACTED █████████ ███████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████   In arriving at this extraordinary

conclusion, Mr. Gemini commits a number of fundamental errors, each of which requires that his

opinion be excluded from any trial of this matter.

████████████████ REDACTED ████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████

████████████████ REDACTED ████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████

████████████████ REDACTED ████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████

581038.01

## II.    STATEMENT OF FACTS

In this case, DataQuill alleges infringement of two patents, both of which were subject to reexamination proceedings:

- U.S. Patent No. 6,058,304 ("the '304 patent") entitled "Data Entry System," issued on May 2, 2000; Reexamination Certificate issued on April 13, 2010 as U.S. Patent No. 6,058,304 C1 ("the '304 C1 patent"); and

- U.S. Patent No. 7,139,591 B2 ("the '591 patent") entitled "Hand Held Telecommunications Data Entry Device," issued on November 21, 2006; Reexamination Certificate issued on October 27, 2009 as U.S. Patent No. 7,139,591 C1 ("the '591 C1 patent").

*See* Dkt. No. 1 (Complaint for Patent Infringement), at ¶¶ 2, 9; Dkt. No. 42 (Notification of Issuance of Reexam. Cert.).   The patents-in-suit stem from the same original application.   The '591 patent is a continuation of the '304 patent.   As a result of reexamination, certain claims of the '304 and '591 patents were cancelled or amended, and certain new claims were added.

On July 16, 2011, DataQuill served the Expert Report of Joseph Gemini ("Gemini Rep.") regarding its purported damages resulting from the alleged infringement of the asserted claims of the patents-in-suit.   *See* Declaration of William Hicks ("Hicks Decl."), Ex. 1 (Gemini Rep.).

### A.    Accused HTC Products And Functionality

HTC makes and sells smartphones.   DataQuill generally contends that HTC devices that run the Android OS platform and HTC devices utilizing the Microsoft Windows 6.5 and 7.0 OS platform infringe the patents-in-suit.

REDACTED

---

[1]   References in brackets [] are to the consecutively paginated exhibits filed concurrently, and are provided for convenience of the Court.

581038.01

1  REDACTED

2     Although DataQuill contends that the accused HTC devices are "covered" by the patents-

3  in-suit, it does not claim to have invented the first handheld data collection device, portable

4  scanning device, camera phone, web browser, or client server merchandising system.  Nor does

5  DataQuill claim to have invented data communications using cellular phones or

6  telecommunications standards.  Rather, the patents-in-suit claim coverage over combinations of

7  concepts and/or features that were already generally known before DataQuill's claimed

8  invention.

9     Notably, the accused HTC devices are packed with technology and features that are

10 completely unrelated to the patents-in-suit—including, for instance, e-mail, voice dialing, text

11 messaging, PDF and video viewing, and WiFi connectivity, just to name a few.  To provide these

12 and other unrelated features, HTC has incurred significant research and development costs.  HTC

13 itself owns approximately 140 U.S. patents.

14 **B.**        REDACTED



HTC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO EXCLUDE THE
OPINIONS OF JOSEPH GEMINI PURSUANT TO FEDERAL RULE OF EVIDENCE 702
CASE NO.  3:08-cv-00543-IEG-BGS

1    REDACTED

2

3

4

5    **C.      DataQuill's Damages Theory**

6    REDACTED

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
     REDACTED

581038.01

### III.   LEGAL STANDARDS

**A.   Legal Standard For The Admission Of Expert Testimony**

"District judges are the gatekeeper for expert testimony to assure that it is both relevant and reliable." *Avila v. Willits Envt'l Remediation Trust*, 633 F.3d 828, 836 (9th Cir. 2011) (citing *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993)). Under Federal Rule of Evidence 702, expert testimony is admissible only where: "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702.

Reliable testimony must be grounded "in the methods and procedures of science" and signify knowledge beyond "subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590. Thus, an expert's testimony should be excluded when it is based on subjective beliefs or unsupported speculation which is no more than unreliable *ipse dixit* guesswork. *See, e.g., Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (holding that trial court may properly exclude *ipse dixit* opinions where "there is simply too great an analytical gap between the data and the opinion proffered"); *Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 607 (9th Cir. 2002) (affirming the exclusion of the *ipse dixit* testimony of plaintiff's expert that was not based upon objective, verifiable evidence). Expert testimony is also inadmissible when it is inconsistent with governing legal principles. *See DSU Med. v. JMS Co., Ltd.*, 296 F. Supp. 2d 1140, 1156 (N.D. Cal. 2003) ("In *Daubert-Kumho* 'gatekeeper' terms, the proffered expert testimony … relies upon a legal 'principle' that is not legally acceptable to this Court and the testimony is, to that extent, inadmissible.").

The proponent of expert testimony must establish its admissibility by a preponderance of evidence. *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987).

**B.   Legal Standards Governing Damages In The Form Of A "Reasonable Royalty"**

A patent holder who proves infringement of a valid patent is entitled to damages adequate to compensate for the infringement. "The patentee bears the burden of proving damages," and to carry that burden it "must sufficiently [tie the expert opinion on damages] to the facts of the

1  case.'"  *Uniloc USA, Inc. v. Microsoft Corp.,* 632 F.3d 1292, 1315 (Fed. Cir. 2011) (quoting

2  *Daubert*, 509 U.S. at 591)).

3       One measure of damages, ▮▮▮▮▮▮▮▮▮▮REDACTED▮▮▮▮▮▮▮▮▮▮ is a "reasonable

4  royalty."[5]  *See* 35 U.S.C. § 284.  One form of a reasonable royalty is called a "lump sum."

5  Typically, a lump sum is a one-time payment made as of the time an agreement is entered, and it

6  typically compensates for past infringement as well as a license going into the future, through the

7  expiration of the licensed patents.  *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1326

8  (Fed. Cir. 2009).  Another form of reasonable royalty, ▮▮▮▮▮▮▮REDACTED▮▮▮▮▮▮▮

9  is known as a "running royalty."  "In a standard running royalty license, the amount of money

10  payable by the licensee to the patentee is tied directly to how often the licensed invention is …

11  used or incorporated into products by the licensee."  *Id*.  A running royalty typically is calculated

12  by multiplying a royalty base (such as the number of units of an infringing product) by a royalty

13  rate (such as a number of cents per unit).

14       Whether the hypothetical agreement calls for a lump sum payment or a running royalty,

15  "a 'reasonable royalty' derives from a hypothetical negotiation between the patent owner and the

16  infringer when the infringement began."  *ResQNet.com, Inc. v. Lansa, Inc*., 594 F.3d 860, 868

17  (Fed. Cir. 2010).  "The hypothetical negotiation tries, as best as possible, to recreate the *ex ante*

18  licensing scenario and to describe the resulting agreement."  *Lucent Techs.*, 580 F.3d at 1325.

19       "A comprehensive (but unprioritized and often overlapping) list of relevant factors for a

20  reasonable royalty calculation appears in *Georgia-Pacific Corp. v. U.S. Plywood Corp*., 318 F.

21  Supp. 1116 (S.D.N.Y. 1970)."  *ResQNet*, 594 F.3d at 869.  Although the Federal Circuit "has

22  sanctioned the use of *Georgia-Pacific* factors to frame the reasonable royalty inquiry …

23  evidence purporting to apply to these, and any other factors, must be tied to the relevant facts and

24  circumstances of the particular case at issue and the hypothetical negotiations that would have

25  taken place in light of those facts and circumstances at the relevant time."  *Uniloc*, 632 F.3d at

26

27  [5] When the patent owner does not practice the patents-in-suit (*i.e.*, make or sell products
embodying the claimed invention), in the event of liability, the typical form of damages awarded

28  to the patent owner is called a "reasonable royalty".  Because DataQuill is a so-called "non-practicing entity," it would not be entitled to lost profits — which is the other measure of patent-

6

1317-18.  "[T]he damages inquiry must concentrate on compensation for the economic harm caused by infringement of the claimed invention."  *ResQNet*, 594 F.3d at 869.  Thus, "[a]ny evidence unrelated to the claimed invention does not support compensation for infringement but punishes beyond the reach of the statute."  *Id*.

## IV.   ARGUMENT

REDACTED

**A.**                              REDACTED

The first *Georgia Pacific* factor to be considered in a reasonable royalty analysis is "the royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty."  *ResQnet*, 594 F.3d at 869 (quoting *Georgia-Pacific*, 318 F. Supp. at 1120).  REDACTED

infringement damages.

7

1   REDACTED

2

3

4

5

6

7

8        The Federal Circuit has "long required district courts performing reasonably royalty

9   calculations to exercise vigilance when considering past licenses to technologies other than the

10  patent in suit." *ResQNet*, 594 F.3d at 870.   It has also repeatedly and consistently held that

11  "there must be a basis in fact to associate the royalty rates used in prior licenses to the particular

12  hypothetical negotiation at issue in the case."   *Uniloc,* 632 F.3d at 1317.   Thus, in *Lucent*

13  *Technologies*, the Federal Circuit recently rejected a patentee's reliance on "eight varied license

14  agreements," where the specific subject matter of the agreements was either not explained to the

15  jury or the license was "directed to a vastly different situation than the hypothetical licensing

16  scenario of the present case."   580 F.3d at 1327-31.   The court also noted that, for four of the

17  patents, the patentee did not describe the relationship between the patented technology licensed

18  therein and the licensee's products.   *Id*. at 1330.   As the court explained: "[A] lump-sum

19  damages award cannot stand solely on evidence which amounts to little more than a recitation of

20  royalty numbers, one of which is arguably in the ballpark of the jury's award, particularly when

21  it is doubtful that the technology of those agreements is in any way similar to the technology

22  being litigated here." *Id*. a1329.

23        Similarly, in *ResQNet*, the Federal Circuit held that the patentee's expert improperly

24  inflated his royalty conclusion by relying on licenses that did not mention the patents-in-suit or

25  show "any other discernable link to the claimed technology."   594 F.3d at 870.   Rejecting the

26  expert's testimony and vacating the damages award, the court cautioned that on remand "the trial

27  court should not rely on unrelated licenses to increase the reasonably royalty rate above rates

28  more clearly linked to the economic demand for the claimed technology."   *Id*. at 872-73.

1    Countless other decisions further confirm the black-letter rule that "licenses relied on by

2    the patentee in proving damages [must be] sufficiently comparable to the hypothetical license at

3    issue in suit," *Lucent Techs.*, 580 F.3d at 1325, and "comparisons of past patent licenses to the

4    infringement must account for 'the technological and economic differences' between them,"

5    *Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1320 (Fed. Cir. 2010)

6    (quoting *ResQNet*, 594 F.3d at 870)); *Trell v. Marlee Elecs. Corp.*, 912 F.2d 1443, 1446-47 (Fed.

7    Cir. 1990) (reversing reasonable-royalty award that relied on licenses that covered a broader

8    range of technology than the patents-in-suit).  In one such decision, the district court excluded an

9    opinion on reasonable royalty damages by Mr. Gemini himself because he improperly relied on a

10   study of industry license agreements that "encompass much more than the [patented] feature at

11   issue in [the] case" to justify a reasonably royalty that was "much higher than the existing royalty

12   rates for licenses to the patents-in-suit."  *See IP Innovation, LLC v. Red Hat, Inc.*, 705 F. Supp.

13   2d 687, 690-91 (E.D. Tex. 2010).

14   REDACTED

15

16

17

18

19

20

21

22

23

24   REDACTED

25

26

27

28

581038.01

1    REDA

2    CTED

3    Clearly, though, even if two sets of technology are related, or even

4    interdependent, that does not make them "comparable" for purposes of determining a reasonable

5    royalty, regardless of any differences.  *See, e.g., Lucent Techs., Inc. v. Gateway, Inc.*, 509 F.

6    Supp. 2d 912, 939 (S.D. Cal. 2007) (licenses of computer hardware technology were not

7    "comparable" to the software technology at in issue in the relevant hypothetical negotiation);

8    *Fenner Invs., Ltd. v. Hewlett-Packard Co.*, No. 6:08-CV-273, 2010 WL 3911372, at *2 (E.D.

9    Tex. April 16, 2010) (excluding testimony of damages expert who relied on licensing agreements

10   that were "in the same field of technology as the patents-in-suit" without explaining specifically

11   how the agreements pertained to comparable technology).

12   REDACTED

13

14

15

16

17

18

19

20

21

22   6   REDACTED

23

24

25

26

27

28

10

HTC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO EXCLUDE THE
OPINIONS OF JOSEPH GEMINI PURSUANT TO FEDERAL RULE OF EVIDENCE 702
CASE NO.  3:08-cv-00543-IEG-BGS

581038.01



1  ██████████████████████████ REDACTED ██████████████████████████

2  ████████████████████████████████████████████████████████████

3  ████████████████████████████████

4      Qualcomm, for instance, is "an industry leader in the development of CDMA and related

5  technologies" whose patent portfolio consists of "approximately 12,600 U.S. patents and

6  applications and approximately 59,000 foreign granted patents and applications."  *Wi-LAN, Inc.*

7  *v. Research in Motion Corp.*, No. 10cv859-W (CAB), 2010 WL 2998850, at *2 (S.D. Cal. July

8  28, 2010).  In the *Wi-LAN* case, the plaintiff, Wi-LAN (a non-practicing entity, like DataQuill),

9  sought to subpoena Qualcomm's CDMA licensing agreements, asserting that they were

10  probative of the reasonable royalty that RIM would have agreed to pay for the use of two Wi-

11  LAN patents relating to CDMA technology.  The court disagreed and quashed the subpoena,

12  holding that "Qualcomm's licenses for its CDMA patents … have extremely little, if any

13  relevance, to Wi-LAN's hypothetical negotiation for its CDMA patent with the defendants in the

14  [underlying] action."  *Id.* at *5 (noting further that "there was no evidence that the numerous,

15  global patents included in the Qualcomm licenses are analogous or comparable inventions to the

16  Wi-LAN patents at issue, other than Wi-LAN's generic statement that they are for CDMA

17  technology").

18  ██████████████████████████ REDACTED ██████████████████████████

19  ████████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████████

26

27  ██████████████████████████ REDACTED ██████████████████████████

28  ████████████████████████████████████████████████████████████

11

581038.01

1

2 REDACTED

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26 REDACTED

27

28

12

581038.01



REDACTED

581038.01



REDACTED

14

581038.01



REDACTED

x

To properly calculate a reasonable royalty based on a running royalty rate, patentees generally are not entitled to use the entire value of the accused products, but instead must "separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features." *Uniloc*, 632 F.3d at 1318 (citing *Garretson v. Clark,* 111 U.S. 120 (1884); *see also Mirror Worlds, LLC v. Apple, Inc.,* No. 6:08CV88, 2011 WL 1304488,at *18 (E.D. Tex. April 4, 2011) (vacating damages award because the patentee "was obligated to properly apportion the royalty base to address the accused features, which it did not do"). Patentees can be excepted from the obligation to apportion the royalty base only by properly invoking the "entire market value rule," which "allows a patentee to assess damages based on the entire market value of the accused product" upon showing that "the patented feature creates the basis for customer demand or substantially create[s] the value of the component parts." *Uniloc*, 632 F.3d at 1318 (internal citations and quotations omitted). The fact that the infringing and non-infringing parts are sold together for business advantage is insufficient to invoke the entire market value rule. *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1549-50

15

HTC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO EXCLUDE THE OPINIONS OF JOSEPH GEMINI PURSUANT TO FEDERAL RULE OF EVIDENCE 702
CASE NO. 3:08-cv-00543-IEG-BGS

(Fed. Cir. 1995). Moreover, "Supreme Court and [Federal Circuit] precedents do not allow consideration of the entire market value of accused products for minor patent improvements simply by asserting a low enough royalty rate." *Uniloc*, 632 F.3d F.3d at 1320. "Unless a party satisfies the entire market value test, a patentee seeking damages for a component cannot use the entire market value of the larger product as a royalty base." *Lucent Techs., Inc. v. Microsoft Corp.*, 2011 WL 2728317, at *5 (S.D. Cal. July 13, 2011).

REDACTED

*See, e.g., Lucent*, 2011 WL 2728317, at *7 (excluding opinion of damages expert who erroneously failed to separate between patented and unpatented features); *Oracle Am., Inc. v. Google, Inc.*, No. C 10-03561 WHA, 2011 WL 2976449, at *4 (N.D. Cal. July 22, 2011) (same; "The fact that Java may be a critical component of Android does not justify application of the entire market value rule. Wheels are critical to an automobile, but no one would apportion all of

16

1  the demand for a car to just the wheels.”); *Cornell Univ. v. Hewlett-Packard Co.*, 609 F. Supp.

2  2d 279, 287-90 (N.D.N.Y. 2009) (excluding testimony of damages expert who offered trial

3  testimony that HP's total server and work station revenues were the appropriate royalty base, in

4  derogation of the court's exclusion order).

5  ### V.    CONCLUSION

6  Mr. Gemini's damages report and related opinions fail to satisfy the admissibility

7  requirements of Rule 702 or the Supreme Court's directives in *Daubert* and *Kuhmo Tire*.

8  Accordingly, HTC respectfully requests the Court to exclude his opinions and testimony from

9  any trial of this matter.

10

11  Dated:  September 26, 2011                                        Respectfully submitted,

12                                                                   **KEKER & VAN NEST LLP**

13                                                           By:     /s/ Leo L. Lam

14                                                                   LEO L. LAM
                                                                     EUGENE M. PAIGE
15                                                                   633 Battery Street
                                                                     San Francisco, CA  94111
16                                                                   E-mail:  LLam@kvn.com
                                                                     E-mail:  EPaige@kvn.com
17
                                                                     **WILSON TURNER & KOSMO LLP**
18                                                                   FREDERICK W. KOSMO, JR.
                                                                     550 West C Street, Suite 1050
19                                                                   San Diego, California 92101
                                                                     Tel: 619.236.9600
20                                                                   Fax: 619.236.9669
                                                                     E-mail: fkosmo@wilsonturnerkosmo.com
21
                                                                     **WINSTON & STRAWN LLP**
22                                                                   PETER J. CHASSMAN *(admitted pro hac vice)*
                                                                     GREGORY A. DUFFEY *(admitted pro hac vice)*
23                                                                   1111 Louisiana, 25th Floor
                                                                     Houston, Texas 77002
24                                                                   Tel: 713.651-2600
                                                                     Fax: 713.651-2700
25                                                                   E-mail: pchassman@winston.com
                                                                     E-mail: gduffey@winston.com
26
                                                                     *Attorneys for Defendant and Counterclaimant*
27                                                                   HTC CORPORATION

28

17
HTC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO EXCLUDE THE
OPINIONS OF JOSEPH GEMINI PURSUANT TO FEDERAL RULE OF EVIDENCE 702
CASE NO.  3:08-cv-00543-IEG-BGS

581038.01