1
**WILSON TURNER & KOSMO LLP**
FREDERICK W. KOSMO, JR. #138036
2
fkosmo@wilsonturnerkosmo.com
550 West C Street, Suite 1050
3
San Diego, CA 92101
Telephone:  (619) 236-9600
4
Facsimile:  (619) 236-9669

5
**WINSTON & STRAWN LLP**
PETER J. CHASSMAN (*admitted pro hac vice*)
6
pchassman@winston.com
GREGORY A. DUFFEY (*admitted pro hac vice*)
7
gduffey@winston.com
1111 Louisiana, 25th Floor
8
Houston, TX 77002
Telephone:  (713) 651-2600
9
Facsimile:  (713) 651-2700

10
**KEKER & VAN NEST LLP**
ROBERT A. VAN NEST - # 84065
11
rvannest@kvn.com
LEO L. LAM - # 181861
12
llam@kvn.com
EUGENE M. PAIGE - # 202849
13
epaige@kvn.com
633 Battery Street
14
San Francisco, CA 94111-1809
Telephone:    415 391 5400
15
Facsimile:    415 397 7188

16
Attorneys for Defendant and Counter-claimant
HTC CORPORATION
17

18
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

19

| | |
|---|---|
| 20  DATAQUILL LIMITED, | Case No. 3:08-cv-00543-IEG-BGS |
| 20         Plaintiff, | **MEMORANDUM IN SUPPORT OF HTC'S MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF JOSEPH GEMINI PURSUANT TO RULE 702 OF THE FEDERAL RULES OF EVIDENCE [UNDER SEAL]** |
| 21       v. | |
| 22  HTC CORPORATION, | |
| 22         Defendant. | Date: April 9, 2012 |
| 23 | Time: 10:30 a.m. |
| 24  HTC CORPORATION, | Location:  Courtroom 1 |
| 25         Counter-Claimant, | Judge:        Hon. Irma E. Gonzalez |
| 25       v. | Magistrate Judge:  Hon. Bernard G. Skomal |
| 26  DATAQUILL LIMITED, | Complaint filed:  March 24, 2008 |
| 27 | Trial Date:  July 10, 2012 |
| 27         Counter-Defendant. | |
| 28 | |

636812.01

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................1

II.  BACKGROUND ................................................................................2

III. ARGUMENT.......................................................................................4

    A.   Mr. Gemini continues to rely on prior licenses that are not comparable to
        the hypothetical agreement that would be reached between the parties. ..................4

        1.   ████████████████████ ........................................5

        2.   ███████████████ ...............................................7

    B.   Mr. Gemini may not properly rely upon the ██████████████
        ████████ o bolster his reasonable royalty opinion.............................11

    C.   Mr. Gemini cannot properly use the ███████ license to value the patents-
        in-suit. ..................................................................................13

IV.  CONCLUSION.................................................................................15

MEMORANDUM IN SUPPORT OF HTC'S MOTION TO EXCLUDE THE OPINIONS AND
TESTIMONY OF JOSEPH GEMINI
Case No. 3:08-cv-00543-IEG-BGS

636812.01

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

<u>Federal Cases</u>

4

*Fail-Safe, L.L.C. v. A.O Smith Corp.*
    744 F. Supp. 2d 870 (E.D. Wis. 2010) ........................................................................ 11

5

*Gargoyles, Inc. v. United States*
    37 Fed.Cl. 95 (1997) ...................................................................................................... 6

6

7

*Laserdynamics, Inc. v. Quanta Computer, Inc.*
    Case No. 2:06-CV-348-TJW-CE, 2011 U.S. Dist. LEXIS 42590 (E.D. Tex.
    Jan. 7, 2011) ................................................................................................................... 6

8

9

*Lucent Techs., Inc. v. Gateway, Inc.*
    580 F.3d 1301 (Fed. Cir. 2009) .................................................................. 4, 5, 6, 8, 10

10

*ResQNet.com v. Lansa, Inc.*
    594 F.3d 860 (Fed. Cir. 2010) ....................................................................................... 5

11

*Riles v. Shell Exploration & Production Co.*
    298 F.3d 1302 (Fed. Cir. 2002) ................................................................................... 11

12

13

*Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*
    862 F.2d 1564 (Fed. Cir. 1988) ................................................................................... 11

14

*Uniloc USA, Inc. v. Microsoft Corp.*
    632 F.3d 1292 (Fed. Cir. 2011) ................................................................................... 13

15

16

*Wordtech Sys. v. Integrated Networks Solutions, Inc.*
    609 F.3d 1308 (Fed. Cir. 2010) ........................................................................ 5, 8, 10

17

18

19

20

21

22

23

24

25

26

27

28

ii

636812.01

## I.     INTRODUCTION[1]

On December 1, 2011, this Court granted HTC's motion to preclude certain testimony of DataQuill's damages expert, Mr. Joseph Gemini.  It held that Mr. Gemini could not rely upon what he referred to as the "significant patent agreements"—agreements that HTC had entered into with giants of the telecommunications industry for patents essential to the practice of communications standards—in arriving at what he asserted to be an appropriate reasonable royalty for infringement of the patents-in-suit.  Because this ruling eviscerated the core of Mr. Gemini's opinion, DataQuill sought permission to submit a new expert report.  The Court granted that request, and on January 31, 2012, Mr. Gemini served his Superseding Expert Report on HTC.

No longer able to rely upon HTC's agreements with industry giants to provide a justification for his opinion, Mr. Gemini has now cherry-picked ███████████████ ████████████████████ to provide a purported basis for his view of the outcome of a hypothetical negotiation. ██████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████

---

[1] References in brackets [] are to the consecutively paginated exhibits filed concurrently herewith.
[2] ████████████████████████████████████

MEMORANDUM IN SUPPORT OF HTC'S MOTION TO EXCLUDE THE OPINIONS AND
TESTIMONY OF JOSEPH GEMINI
Case No. 3:08-cv-00543-IEG-BGS

1  ███████████████████████████████████████████████████

2  ███████████████████████████████████████████████████

3  ███████████████████████████████████████████████████

4  ███████████████████████████████████████████████████

5  ███████████████████████████████████████████████████

6  ███████████████████████████████████████████████████

7  ████████████████████████████████

8  ███████████████████████████████████████████████

9  ███████████████████████████████████████████████████

10 ███████████████████████████████████████████████████

11 ███████████████████████████████████████████████████

12 ███████████████████████████████████████████████████

13 ███████████████████████████████████████████████████

14 ██████████████████████████████████████ The Court has already held

15 that agreements of this type do not provide a proper basis for calculating a reasonable royalty in

16 this case.

17       This opinion is junk science at its worst.  The Court should once again grant HTC's

18 motion to exclude Mr. Gemini's testimony.

19 **II.    BACKGROUND**

20       On July 16, 2011, DataQuill served the Expert Report of Joseph Gemini regarding its

21 purported damages resulting from the alleged infringement of the asserted claims of U.S. Patent

22 Nos. 6,058,304 ("the '304 patent"), 7,139,591 C1, and 6,058,304 C1 (collectively, "the patents-

23 in-suit").  *See* Dkt. 135-2, Ex. 1 (Initial Gemini Rep.).  Mr. Gemini used ten of HTC's licenses

24 with industry giants (the so-called "significant patent agreements") to arrive at the extraordinary

25 conclusion that HTC would have agreed to pay DataQuill ████████████████████████████

26

---

27 [3] *See* Declaration of William S. Hicks in Supp. of HTC's 3/12/12 Mot. to Exclude the Testimony

28 of Joseph Gemini ("Hicks Decl."), Ex. 5 (transcript of 3/07/12 depo) at 490:6-14 [143].

1

██████████████████████████████████████████

2          On September 26, 2011, HTC moved to exclude Mr. Gemini's initial damages opinion,

3   among other reasons, because Mr. Gemini had failed to establish that HTC's "significant patent

4   agreements" were in any way comparable to the hypothetical agreement that would be reached

5   between the parties to the present suit. *See* Dkt. No. 135. On December 1, 2011, the Court issued

6   an order excluding Mr. Gemini's testimony to the extent he relied upon the "significant patent

7   agreements" to determine a reasonable royalty. Dkt. No. 192. The Court recognized in its

8   opinion that "comparisons of past patent licenses to the infringement must account for the

9   technological and economic differences between them." *Id.* at 27 (quoting *Wordtech Sys. v.*

10  *Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1320 (Fed. Cir. 2010) (internal quotes

11  omitted)). Because Mr. Gemini's initial expert report contained "no analysis at all of the

12  economic differences between the 'significant patent agreements' and the license reached at the

13  hypothetical negotiation," the Court concluded that his opinion "should be excluded on this

14  ground alone." *Id.* at 29.

15         After receiving permission from the Court to try again, on January 31, 2012, Mr. Gemini

16  served his Superseding Expert Report ("Superseding Report"), in which he purported to revise his

17  initial damages opinion in light of the Court's December 1 Order. *See* Hicks, Decl., Ex. 1

18  (Superseding Rep.). Although he had previously denigrated DataQuill's prior licenses of the

19  patents-in-suit as "settlements" that could not be used to evaluate the outcome of a hypothetical

20  negotiation, in his Superseding Report, Mr. Gemini now contends that ███████████████████

21  ██████████████████████████████████████████████████████████████████

22  ██████████████████████████████████████████████████████████

23  ██████████████████████████████████████████████████

24  ██████████ [4]

25

26  ────────────────────
    [4] At his most recent deposition, Mr. Gemini was still unwilling to opine that any of these
27  agreements either prove or tend to prove an established royalty for the patents-in-suit—which is
    the *Georgia-Pacific* factor under which he considered them. *Id.*, Ex. 5 at 338:4-339:13 [105-
28  106].

MEMORANDUM IN SUPPORT OF HTC'S MOTION TO EXCLUDE THE OPINIONS AND
TESTIMONY OF JOSEPH GEMINI
Case No. 3:08-cv-00543-IEG-BGS



III. **ARGUMENT**

     A.    **Mr. Gemini continues to rely on prior licenses that are not comparable to the hypothetical agreement that would be reached between the parties.**

     Although, in his Superseding Report, Mr. Gemini relies on a different set of agreements to concoct a new (but still unreasonable) set of royalty rates, he fails once again to carry his burden of proving that the agreements upon which he seeks to rely are economically comparable to what would have emerged from a hypothetical negotiation in this case. Indeed, even Mr. Gemini apparently does not believe that the ▮▮▮▮▮▮▮▮▮▮▮▮▮ agreements are economically comparable, because he studiously avoids saying so in his report. *See, e.g.*, Superseding Rep. at 30 [31] ▮▮▮▮▮▮▮▮▮▮ agreements provide information "that could be deemed useful ..."); *id.* at 23 [24] ▮▮▮▮▮▮ "provides an indication as to a calculable royalty rate ..."); *id.* at 26 [27] ▮▮▮▮▮▮▮▮▮ "provide information that would allow the application of a royalty rate"); *see also* Hicks Decl., Ex. 5 at 339:8-10 [106] ("In terms of my analysis, they don't prove an established royalty or generally tend to prove an established royalty. They do provide information ... as to royalty rates ..."). Because the economic circumstances surrounding the ▮▮▮▮▮▮▮▮▮▮▮▮ are all "radically different" than the hypothetical agreement that would have been negotiated here, Mr. Gemini's testimony must be excluded. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1327-28 (Fed. Cir. 2009); *see also*

4

MEMORANDUM IN SUPPORT OF HTC'S MOTION TO EXCLUDE THE OPINIONS AND
TESTIMONY OF JOSEPH GEMINI
Case No. 3:08-cv-00543-IEG-BGS

*ResQNet.com v. Lansa, Inc.*, 594 F.3d 860, 869-70 (Fed. Cir. 2010); *Wordtech Sys.*, 609 F.3d at 1319-20.

             **1.**       **The** ██████████████ **Agreements.**

██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████ These agreements are not in any way comparable to the license that would be negotiated as part of the hypothetical negotiation in this case.

**Different scope of license.** ████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████ Thus, even if DataQuill may properly use the total value

---

[5] *See Lucent Techs., Inc.,* 580 F.3d at 1330 (criticizing damages expert for relying on prior licenses without accounting for "whether the patented technology is essential to the licensed product being sold, or whether the patented invention is only a small component or feature of the licensed product").

█████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
███████████████████████████

of handsets sold by HTC as its royalty *base*, Mr. Gemini cannot calculate a reasonable royalty *rate* simply by applying the rates found in past agreements that have a different relationship to the patented technology.[7]  Because Mr. Gemini doesn't even attempt to adjust the royalty base (or rate) for the HTC products to account for the more limited functionality provided by the ███████████████████████████████—or even offer any way to show how such an adjustment could be made—his use of non-comparable royalty rates is arbitrary and unreliable.

      **Sales volumes are incommensurate.**  Mr. Gemini also fails to account for vast differences in sales volume. ██████████████████████████████████ ██████████████████████████████████████████████████████ ████████████████████████████  This huge disparity is significant because "[g]enerally speaking, the royalty rate and royalty base have an inverse relationship, so that when the base goes down the rate goes up, and vice-versa."  *See Gargoyles, Inc. v. United States*, 37 Fed.Cl. 95, 103 (1997).  Mr. Gemini purports to account for this volume-discounting dynamic by suggesting that the lower sales volume "tends to lower the reasonable royalty to the lower end of the range."  But he fails to explain why it is sufficient merely to use the "lower end of the range" when the sales volume for HTC's accused products is orders of magnitude greater than the sales volume in ████████████████████  That suggests that a whole different range would be appropriate.  Notably, even after supposedly accounting for differences in sales volume, Mr. Gemini's proffered minimum royalty rate of 0.6% █████████████ ██████████████████████████████████████████████████████████ ███████████████

      **Amount of payment is radically different.**  Mr. Gemini's (unstated) assumption that the

---

[7] *See Lucent Techs., Inc.*, 580 F.3d at 1339 ("There is nothing inherently wrong with using the market value of the entire product … so long as the multiplier accounts for the proportion of the base represented by the infringing component or feature."); *see also Laserdynamics, Inc. v. Quanta Computer, Inc.*, Case No. 2:06-CV-348-TJW-CE, 2011 U.S. Dist. LEXIS 42590, at *10 (E.D. Tex. Jan. 7, 2011) (to establish comparability, "Plaintiff must present evidence sufficient to allow the jury to weigh the economic value of the patented feature against the economic value of the features and services covered by the license agreement").

1

2 ███████████████████████ are comparable to the hypothetical agreement at issue here is

also fundamentally at odds with the ██████████████████████████████

3 ████████████████████████████████████████████

4 ████████████████████████████████████████████

5 ████████████████████████████████████████████

6 ███████████████████████████████████████

7 ████████████████████████████████████████████

8 ███████████████████████████████████████████████

9 ████████[8]   In sharp contrast, DataQuill is presently seeking from HTC more than $67 million in

10 alleged past damages ($45.5 million for the '304 patent alone), not to mention a penny for each

11 and every dollar of total revenue it makes from selling mobile handsets into the future.  Mr.

12 Gemini fails to account for these differences, or even acknowledge them, because ███

13 ████████████████████████████████████████ plainly do not support the

14 hyper-inflated running royalty figures stated in his report.

15          **2.     The HP Agreement.**

16 ████████████████████████████████████████████

17 ████████████████████████████████████████████

18 ████████████████████████████████████████████

19 ████████████████████████████████████████████

20 ████████████████████████████████████████████

21 █████████████████████████████████████████

22 █████████████████████████████████████████

23

24 ───────────────

[8] Companies that intend to exit the market, and indeed apparently never paid a cent in ongoing
royalty payments, would have far different incentives when negotiating a running royalty than
would HTC.  Needless to say, a company that knows that it will never pay a running royalty on
future sales has little incentive to bargain for a low (or even reasonable) running royalty rate.

26 [9]

27 ████████████████████████████████████████████

28 ████████████████████████

MEMORANDUM IN SUPPORT OF HTC'S MOTION TO EXCLUDE THE OPINIONS AND
TESTIMONY OF JOSEPH GEMINI
Case No. 3:08-cv-00543-IEG-BGS

1

2                                 Superseding Rep. at 23 [24].  But Mr. Gemini's analysis

3 is so riddled with errors that it cannot pass muster under the *Daubert* standard.  *See, e.g., Lucent*

4 *Techs., Inc.,* 580 F.3d at 1330-31; *Wordtech Sys.,* 609 F.3d at 1319-20.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[11] *See* Hicks Decl., Ex. 5, at 427:19-25 [128]; *see also* Dkt. No. 135-2, Ex. 2 at 182:9-184:3.

*See Wordtech Sys., Inc.*, 609 F.3d at 1319-20; *Lucent*, 580 F.3d at 1329-30.

Mr. Gemini ignores these agreements (and their negotiation history)—not because they are irrelevant to the hypothetical agreement at issue here—but because they would cast severe doubt on the inflated, result-driven damages opinions stated in his report.

12

10

It is a "sound principle of law, commonly accepted" that "the patentee's usual licensing approach should be considered in assessing a reasonable royalty." *Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*, 862 F.2d 1564, 1568 (Fed. Cir. 1988).  But despite this venerable and common-sense maxim, Mr. Gemini's so-called "methodology" is colored by a transparent desire to inflate his royalty calculation by glossing over DataQuill's real-world licensing practices. Under Mr. Gemini's approach, it doesn't matter that ██████████████████████████ ███████████████████████████████████████████████████████████████ ██████████████ Nor is it instructive, according to Mr. Gemini, that ████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████ This sort of evidence sheds a great deal of light on what DataQuill sought—and was actually willing to accept—in the real world, which is a far better guide as to the likely course of a hypothetical negotiation than Mr. Gemini's speculation.  "The law should make sense even in a field as murky as hypothetical negotiations to fix a reasonable royalty." *Studiengesellschaft Kohle, m.b.H.*, 862 F.2d at 1568; *see also Riles v. Shell Exploration & Production Co.*, 298 F.3d 1302, 1313 (Fed. Cir. 2002) (vacating damages award when expert's damages "models ignored [plaintiff]'s established licensing practice").   Under Mr. Gemini's approach, it does not.

Because Mr. Gemini's cherry-picking methodology is not explained by any valid principle of economic analytical method, his unreliable royalty calculation must be excluded for this additional reason.  *See, e.g., Fail-Safe, L.L.C. v. A.O Smith Corp.*, 744 F. Supp. 2d 870, 891 (E.D. Wis. 2010) (excluding purported expert analysis when no explanation was provided for reliance on cherry-picked data).

**B.   Mr. Gemini may not properly rely upon the** ████████████████ ███████████ **to bolster his reasonable royalty opinion.**

In an effort to blackboard a number that might support his overreaching running royalty

11

MEMORANDUM IN SUPPORT OF HTC'S MOTION TO EXCLUDE THE OPINIONS AND
TESTIMONY OF JOSEPH GEMINI
Case No. 3:08-cv-00543-IEG-BGS

1  opinion, Mr. Gemini purports to find a

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25  is unsustainable and hopes to prevent it from infecting the remainder of his report.

26  The Court should strike his opinion to the extent that he attempts to place reliance on this

27  agreement in order to put a percentage figure larger than his unreasonable running royalty in front

28

12

MEMORANDUM IN SUPPORT OF HTC'S MOTION TO EXCLUDE THE OPINIONS AND
TESTIMONY OF JOSEPH GEMINI
Case No. 3:08-cv-00543-IEG-BGS

of the jury.

This is not the first time that Mr. Gemini has attempted to inject inappropriate material into a jury's consideration by claiming that what he is advocating is simply a "reasonableness check" on his main opinion. In *Uniloc*, the Federal Circuit held that Mr. Gemini had improperly injected the total value of the products at issue while claiming that it was just a reasonableness check. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011). Uniloc argued on appeal that the total sales figure was brought in only as a check, and that the jury was instructed not to base its decision on it. But the Federal Circuit rejected that "attempt[] to gloss over the purpose of the check as lending legitimacy to the reasonableness of Gemini's $565 million damages calculation." *Id.* at 1321. As the court explained, it was "of no moment" that the entire market value was brought in only as a "check" because "even if the jury's damages calculation was not based wholly on the … check, the award was supported in part by the faulty foundation …" *Id.* So too here. As in *Uniloc*, Mr. Gemini's attempt to "skew the jury's damages horizon" by presenting unreliable testimony concerning large (but entirely irrelevant) percentages warrants the exclusion of his testimony. *Id.* at 1320.

**C.   Mr. Gemini cannot properly use the ▮▮▮▮▮▮ license to value the patents-in-suit.**

Despite the Court's conclusion that Mr. Gemini cannot properly use licenses between HTC and industry giants, covering broad portfolios of patents, to calculate a reasonable royalty in this case, Mr. Gemini continues to insist on relying upon HTC's license agreement with ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Mr. Gemini has made no attempt, however, to establish its comparability under binding

13

1   Federal Circuit precedent, or the Court's December 1 Order.  To the contrary.  In his Superseding

2   Report, Mr. Gemini expressly concedes that the second *Georgia-Pacific* factor is "inapplicable"

3   because he does not consider *any* of HTC's agreements, presumably including the ███████

4   ███████ "to be comparable to the DataQuill and HTC hypothetical negotiation scenario."

5   Superseding Rep. at 31 [32].  Mr. Gemini also admitted in his deposition that he did not evaluate

6   his use of the ███████ in light of the standards set forth in the Court's December 1

7   Order.  Hicks Decl., Ex. 5 at 481:4-483:6 [141-42].

8       Even if the use of the ███████ would be permitted under the Court's earlier

9   ruling concerning Mr. Gemini's attempted use of similar license agreements entered into for

10  broad patent portfolios (and it is not), Mr. Gemini's opinion is rendered unsound by his failure to

11  correctly perform a simple mathematical calculation.  In his report, he notes that ███████

12  ████████████████████████████████████████

13  ████████████████████████████████████████

14  ████████████████████████████████████████

15  ████████████████████████████████████████

16  ████████████████████████████████████████

17  ████████████████████████████████████████

18  ████████████████████████████████████████

19  ████████████████████████████

20      In HTC's initial motion, HTC did not attack Mr. Gemini's use of the ███████

21  agreement as a justification for enhanced royalty rates, but instead argued more generally that Mr.

22  Gemini's enhanced royalty rates were invalid because they lacked a sufficient factual basis.

23  Thus, the Court did not sanction Mr. Gemini's reliance on the ███████ agreement when it

24  denied that portion of HTC's motion.  Because the ███████ agreement is admittedly not

25  comparable to the hypothetical agreement under consideration, Mr. Gemini should not be

26  permitted to rely upon it to justify his proffered 0.1% enhancement.

27

28

1

IV.    **CONCLUSION**

2          For the foregoing reasons, HTC respectfully requests the Court to exclude Mr. Gemini's

3    unreliable opinions and testimony from any trial in this case.

4

5    Dated: March 12, 2012                          KEKER & VAN NEST LLP

6

7                                            By:    /s/ Leo L. Lam
                                                    ROBERT A. VAN NEST
8                                                   LEO L. LAM
                                                    EUGENE M. PAIGE
9                                                   633 Battery Street
                                                    San Francisco, CA 94111
10                                                  Telephone:  (415) 391-5400
                                                    Facsimile:  (415) 397-7188
11                                                  E-mail:  rvannest@kvn.com
                                                    E-mail:  llam@kvn.com
12                                                  E-mail:  epaige@kvn.com

13                                                  WILSON TURNER & KOSMO LLP
                                                    FREDERICK W. KOSMO, JR. #13806
14                                                  550 West C Street, Suite 1050
                                                    San Diego, CA 92101
15                                                  Telephone:  (619) 236-9600
                                                    Facsimile:  (619) 236-9669
16                                                  E-mail:  fkosmo@wilsonturnerkosmo.com

17                                                  WINSTON & STRAWN LLP
                                                    PETER J. CHASSMAN
18                                                  (admitted pro hac vice)
                                                    GREGORY A. DUFFEY
19                                                  (admitted pro hac vice)
                                                    1111 Louisiana, 25th Floor
20                                                  Houston, TX 77002
                                                    Telephone:  (713) 651-2600
21                                                  Facsimile:  (713) 651-2700
                                                    E-mail:  pchassman@winston.com
22                                                  Email:  gduffey@winston.com

23                                                  Attorneys for Defendant and Counter-
                                                    claimant HTC CORPORATION
24

25

26

27

28
                                            15